Filed 12/12/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM BAXTER et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, <br><br> Defendant and Appellant. | H042680 <br> (Monterey County <br> Super. Ct. No. M127193) |

Eleven retired teachers (Teachers) who had been employed in the Salinas Unified High School District (District), disputed attempts by appellant California State Teachers' Retirement System (CalSTRS) to recoup retirement benefit overpayments. The overpayments were the result of a years-long miscalculation by the District of the monthly retirement benefits to which the Teachers were entitled. The parties do not dispute that the District miscalculated Teachers' monthly benefit amounts. But Teachers contend that the statute of limitations bars CalSTRS's efforts to recoup prior overpayments and to reduce future monthly benefits to the proper amounts.

The dispute stems back to 1999, when the District and the Teachers' union entered into a collective bargaining agreement that purported to create a separate class of employees for teachers who elected to work an extra (sixth) period. Some years later—on August 18, 2005, after three Teachers had retired—a District employee sent a memorandum to the Monterey County Office of Education (MCOE), which arguably alerted MCOE to the potential overpayment of retirement benefits to teachers in the

District who had worked a sixth period.  In December 2008, CalSTRS was advised by its outside auditing firm that Teachers had been overpaid for several years due to the District's improper inclusion of certain earnings in the calculation of their monthly benefits.  In July 2010, CalSTRS directed the District to correct its calculations and remit prior overpayment amounts to CalSTRS.  Teachers and the District appealed the audit findings of CalSTRS and requested an administrative hearing.  In April 2012, before any such hearing, CalSTRS began reducing Teachers' monthly payments.

In February 2013, an administrative law judge (ALJ) rejected the challenges of Teachers and the District, upholding CalSTRS's conclusion that Teachers had been overpaid in the past and that their monthly benefits should be reduced to reflect the proper amounts going forward and should reflect deductions for prior overpayments.  The ALJ rejected the statute of limitations defense asserted by Teachers and the District, i.e., that CalSTRS's efforts to recoup prior overpayments and reduce future benefits were time-barred.  The Appeals Committee of CalSTRS (Committee), which reviewed the ALJ's order, ultimately rendered a decision in CalSTRS's favor.  Teachers successfully brought a petition for peremptory writ of administrative mandamus in the superior court compelling CalSTRS to resume paying them at the original monthly amounts.  The trial court found that CalSTRS was barred by the applicable statute of limitations from either recouping previous overpayments or reducing future payments to reflect the allegedly correct amount of monthly benefits.

In this appeal, we interpret certain provisions of Education Code section 22008[1]— a statute that has not been the subject of any prior appellate decisions.  Under section 22008, subdivision (c) (§ 22008(c)), the three-year statute of limitations applicable for CalSTRS to bring an action to recoup the overpayments commenced with

_____

[1] All further statutory references are to the Education Code unless otherwise specified.

2

its "discovery of the incorrect payment." We conclude, contrary to the trial court's decision, that "discovery" means the date CalSTRS actually discovered, or in the exercise of reasonable diligence should have discovered, the incorrect payment. We hold that August 18, 2005, the date of the District's memorandum to the MCOE, was the correct accrual date of the statute of limitations here because the memorandum gave CalSTRS (through its ostensible agent, MCOE) *inquiry notice* of the overpayment issue.

We also address what action by CalSTRS constituted commencement of an "action" for purposes of determining whether the three-year statute of limitations under section 22008, subdivision (a) (§ 22008(a)) was satisfied. We conclude that, contrary to the trial court's decision, the action was commenced on July 6, 2012, when CalSTRS filed the statement of issues to initiate the administrative proceeding.

The trial court incorrectly concluded that CalSTRS's action to rectify the error for *all* monthly payments, past and future, was time-barred. Although the trial court correctly found that CalSTRS had not satisfied the three-year statute of limitations because it had commenced the action more than three years after its claim accrued, under the continuous accrual theory, the statute of limitations for periodic payments such as Teachers' monthly retirement benefits here commenced with the due date of each payment. Therefore, only payments due more than three years prior to CalSTRS's commencement of the action on July 6, 2012, were subject to Teachers' statute of limitations defense. Accordingly, we will reverse the judgment and remand the matter for further proceedings.

3

FACTUAL AND PROCEDURAL BACKGROUND

I.     *Factual Background*[2]

Teachers[3] are 11 former teachers who taught within the District before retiring and becoming members of CalSTRS.  CalSTRS is the state agency responsible for managing contributions made by employees and member school districts to the State Teachers' Retirement Fund.  (See § 22000 et seq.)  Schools within the District utilized a six period schedule.  Teachers within the District typically taught five of those periods and used the additional period to prepare prospective lesson plans.  Some of them, however, including Teachers, agreed to teach during their sixth period time for additional compensation, and to shift their preparation time to before or after the regular school day.  Teachers believed that this additional compensation would be credited toward their retirement plan, the so-called "Defined Benefit" plan administered by CalSTRS.

Teachers' understanding stemmed, in part, from the District's belief that such sixth period compensation was creditable.  On September 29, 1999, the District and the Salinas Valley Federation of Teachers ("SVFT") entered into a tentative collective bargaining agreement for the 1998-1999 and 1999-2000 school years.  That agreement included an additional schedule for teachers who taught a sixth period, and changed the definition of a normal workday to include the extra period for all sixth period teachers.  Each subsequent iteration of the collective bargaining agreement "contained provisions defining the sixth period teachers as a separate class of employees and the district has developed two distinct salary schedules that reflect the compensation paid to the two classes of certificated employees."

---

[2] The summary of facts is taken from the trial court's intended decision, which summary is recited verbatim by CalSTRS in its opening brief.

[3] Teachers are William Baxter, Linda Blumenthal, Fredric Bradley, Donna Elder, Nancy Faulconer, Pamela Frees, Jennifer Galeria, Louie Modena, Victor Santora, Gisela Shields, and Doreen Taylor.

4

From September 29, 2008, until October 1, 2008, Mayer Hoffman McCann P.C. ("MHM"), an accounting firm commissioned by CalSTRS, performed an audit of District records. CalSTRS received the auditor's findings on December 1, 2008. The audit findings revealed the District's practice of coding Teachers' sixth period earnings as creditable was improper. CalSTRS issued a draft audit report on May 27, 2010, adopting MHM's conclusion that the District had incorrectly coded Teachers' sixth period earnings, causing Teachers to receive a larger monthly retirement benefit than that to which they were entitled.[4]

CalSTRS issued its final audit report on July 30, 2010, upholding the draft report's finding. The audit concluded with two corrective orders. First, CalSTRS demanded that, within 60 days, the District submit corrections to CalSTRS to reverse the improperly credited compensation. Once the District submitted corrections, CalSTRS would recalculate the relevant retired teachers' retirement allowances based on the correct final compensation and adjustment notification letters would be sent to affected teachers. Second, the District was ordered to "remit the total overpayments to CalSTRS for the retired members."

The District failed to either submit corrections or remit the amount of the overpayments to CalSTRS. Consequently, on March 2, 2012, CalSTRS sent letters notifying each of the Teachers that, because the District had failed to comply with the corrective orders, CalSTRS would begin reducing Teachers' respective monthly retirement benefit to the correct amount, effective April 1, 2012. In addition, Teachers'

---

[4] The record does not disclose an explanation for the passage of time of more than 17 months between the issuance of MHM's audit findings and CalSTRS's adoption of the findings of its outside auditor.

5

respective monthly payment was reduced by 5%, the statutory limit, to repay CalSTRS for the overpayments made to date. (See § 24617.)[5]

Teachers appealed the final audit findings on or before December 3, 2010. CalSTRS filed a statement of issues with the Office of Administrative Hearings on July 6, 2012.[6] An administrative hearing was conducted between February 11-15, 2013. All parties appeared. On July 18, 2013, the administrative law judge ("ALJ") issued a proposed decision. The ALJ found in favor of CalSTRS, stated that the District had erred, and held that the District was responsible for reimbursing CalSTRS for the District's reporting errors. On September 9, 2013, the Committee opted to reject the proposed decision, solicit additional briefing from all parties, and reconsider the administrative record and existing evidence. On January 23, 2014, the Committee issued a decision in favor of CalSTRS.

## II. *Procedural History*

Following the entry of the Committee's decision, on March 24, 2014, Teachers filed a petition for a peremptory writ of administrative mandamus under Code of Civil Procedure section 1094.5, naming CalSTRS as respondent and the District as real party in interest. Teachers' arguments included the assertion that insufficient evidence supported the Committee's decision. They sought a writ of mandamus requiring CalSTRS to (1) resume paying them at the monthly benefit levels existing before April 1, 2012, (2) cease any reductions in monthly payments for recoupment of alleged overpayments,

---

[5] Under the Education Code, the District is responsible for repaying the remainder of the overpayment, the difference between the total amount of the overpayments and the actuarial present value of the Teachers' expected payments. (See §§ 24616, 24616.5, 24617.)

[6] The record does not disclose an explanation for the passage of time of more than 19 months between the filing of Teachers' appeals and CalSTRS's filing of its statement of issues.

6

and (3) restore all monies withheld since April 1, 2012, due to reductions in monthly benefits that were improper.

After a trial on the petition on April 2, 2015, the court issued its intended decision on May 1, 2015. The trial court concluded that CalSTRS's claims against Teachers to recover monies paid erroneously due to miscalculation of retirement benefits were time-barred, and CalSTRS was further barred from reducing Teachers' future monthly benefits. A judgment granting issuance of a peremptory writ of mandate was entered on June 3, 2015, (1) reversing the administrative decision of the Committee, (2) barring CalSTRS from further withholding or reducing Teachers' monthly defined benefit retirement payments, (3) directing CalSTRS to reimburse Teachers all retirement amounts previously withheld, plus interest, and (4) directing CalSTRS to reimburse the District for any amounts the District paid to CalSTRS under the administrative decision, plus interest. CalSTRS appealed.

## DISCUSSION

### I.    *Administrative Mandamus*

Under Code of Civil Procedure section 1094.5, a party may file a petition for writ of administrative mandamus "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (§ 1094.5, subd. (a).) Where the decision occurs as a result of a proceeding in which a hearing is required in which evidence is to be taken and the administrative tribunal is vested with discretion to determine the facts, administrative mandamus under section 1094.5 is the exclusive remedy for judicial review of the quasi-adjudicatory administrative action of state-level agencies. (*People v. Tulare County* (1955) 45 Cal.2d 317, 319.)

7

The Legislature has identified two different standards by which the trial court determines whether administrative findings are supported by the evidence—i.e., the independent judgment and substantial evidence standards—without stating which standard applies in a given case. (Code Civ. Proc., § 1094.5, subd. (c).)[7] But the California Supreme Court has explained that in the case of "administrative decisions which substantially affect vested, fundamental rights," the trial court "exercises its independent judgment upon the evidence disclosed in a limited trial de novo." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, fn. omitted.) In other cases in which the decision does not substantially affect vested fundamental rights, the trial court "must still review the entire administrative record to determine whether the findings are supported by substantial evidence." (*Id.* at p. 144.) Even where the independent judgment standard is applicable, the trial court affords the agency's decision considerable weight: "[A] trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).)

Retirement benefits have long been included in the class of vested fundamental rights as to which a superior court independently reviews an agency's findings substantially affecting such rights. (See *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45.) Accordingly, as the trial court here properly recognized, it was required to independently review the agency's factual findings. (See *Molina v. Board of Admin., California Public Employees' Retirement System* (2011)

---

[7] "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

200 Cal.App.4th 53, 61; *O'Connor v. State Teachers' Retirement System* (1996) 43 Cal.App.4th 1610, 1620 [retired teachers have fundamental vested right in retirement fund in the amount to which they are entitled under the law].)[8]

## II. Standard of Review

An appellate court—regardless of whether the trial court independently reviews administrative findings or reviews them for substantial evidence—reviews the trial court's findings in administrative mandamus proceedings for substantial evidence. (*Fukuda*, *supra*, 20 Cal.4th at p. 824.) "[D]epending on whether the trial court exercised independent judgment or applied the substantial evidence test, the appellate court will review the record to determine whether either the trial court's judgment or the agency's findings, respectively, are supported by substantial evidence. [Citation.] If a fundamental vested right was involved and the trial court therefore exercised independent judgment, it is the trial court's judgment that is the subject of appellate court review. [Citations.]" (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1058 (*JKH Enterprises*).)

Pure questions of law decided by the trial court are reviewed de novo by the court of appeal. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.) In such instances, the appellate court is not "bound by the findings of the trial court. [Citations.]" (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) Pure legal questions include the interpretation of statutes (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 (*Shamrock Foods*)), California Rules of Court (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 81), and municipal laws (*Woo v. Superior Court* (2000) 83 Cal.App.4th 967, 974). Thus, although a determination of whether a claim is barred by the applicable statute of limitations is typically one of fact

---

[8] CalSTRS below and in its opening brief urged that review of the agency's findings was under the substantial evidence standard. It abandoned that position in its reply brief, asserting that the independent standard of review applied.

(*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 (*Jolly*)), when "the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law. [Citation.]" (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611-612; see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*) [application of statutes of limitations to undisputed facts is purely legal question reviewed de novo by appellate court].)

Although the agency's interpretation of a statute or ordinance is given deference by the court (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219), and "an administrative agency's interpretation of its own regulation . . . deserves great weight [citation]" (*Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310.), it is ultimately " ' "for the courts, not for administrative agencies, to lay down the governing principles of law." ' " (*Garamendi v. Mission Ins. Co.* (2005) 131 Cal.App.4th 30, 41 (*Garamendi*).) "Courts must . . . independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8 (*Yamaha Corp.*).)

III.     *Teachers' Retirement Law*

We briefly describe the state teachers' retirement system at issue to provide context to this appeal, liberally borrowing from a discussion presented in an opinion of the First District Court of Appeal, Division 4. "CalSTRS was created by the Legislature in 1913 as a retirement system for credentialed California teachers and administrators in kindergarten through community college. (See § 22000 et seq. (Teachers' Retirement Law).)" (*Duarte v. California State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 384-385 (*Duarte*).) The Legislature created CalSTRS "to provide a financially sound plan for retirement, with adequate retirement allowances, of teachers in

the public schools of this state, teachers in schools supported by this state, and other persons employed in connection with the schools." (§ 22001.) "The CalSTRS Board is responsible for the administration of CalSTRS, including implementation of the State Teachers' Retirement Plan (plan), and 'shall set policy and shall have the sole power and authority to hear and determine all facts pertaining to application for benefits under the plan or any matters pertaining to administration of the plan and [CalSTRS].' (§ 22201, subd. (a); see §§ 22200, 22219, subd. (a); see also § 22208 [CalSTRS Board may delegate powers to a committee].) The CalSTRS Board has fiduciary obligations—both statutory and constitutional—to soundly administer the plan and maintain its fiscal integrity. (See § 22250 [providing that CalSTRS Board must discharge its duties under the Teachers' Retirement Law 'solely in the interest of the members and beneficiaries' and for the 'exclusive purpose' of providing benefits and defraying administrative expenses]; see also Cal. Const., art. XVI, § 17, subd. (b) ['[n]otwithstanding any other provisions of law,' a retirement board for a public pension or retirement system must discharge its duties 'solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system'].)" (*Duarte*, at pp. 384-385.)

"The constitutional obligations of a public retirement board such as the CalSTRS Board have been interpreted to include a duty 'to "ensure the rights of members and retirees to their full, *earned* benefits." ' [Citation.] Such obligations therefore do not permit the payment of benefits not otherwise authorized. [Citation.] Rather, 'the statutory scheme governs the scope of the benefits earned.' [Citation.] Thus, while ' "[p]ension provisions should be broadly construed in favor of those who were intended to be benefited thereby . . . [,] they cannot be construed so as to confer benefits on persons not entitled thereto." ' [Citation.]" (*Duarte*, *supra*, 232 Cal.App.4th at p. 385, original italics.)

11

IV.    *Statute of Limitations:  Education Code Section 22008*

A.    Summary

We will first consider when the statute of limitations under section 22008(c) commences, i.e., when the claim under the statute accrues.  The statute specifies that the three-year period of limitation for adjustment of errors with respect to the Defined Benefit Program "shall commence with the discovery of the incorrect payment."  (*Ibid.*)  The question is the meaning of "discovery."  Does it mean (as the trial court held) the date the party seeking the adjustment (the claimant) has actual knowledge of the incorrect payment?  Alternatively, does the statute of limitations commence when the claimant knows about, or has reason to suspect the existence of the incorrect payment?[9]  After concluding that the statute commences when the claimant has actual *or inquiry* notice of the incorrect payment, we will consider whether the trial court correctly identified the commencement date of the statute of limitations in this instance.  We find that the court, although it applied the incorrect legal standard, correctly held that the claim accrued on August 18, 2005.

Second, we will consider the meaning of the language "action may be commenced" in section 22008(a) to determine what constitutes an "action" for purposes of satisfying the three-year statute of limitations.[10]  Contrary to the trial court's conclusion that CalSTRS commenced an action in April 2012 when it began reducing Teachers' monthly retirement payments, we hold that CalSTRS commenced the action on July 6, 2012, when it filed the statement of issues to initiate the administrative proceeding.

---

[9] This "knows or has reason to suspect" standard is often referred to as the discovery rule.  We will sometimes refer to "reason to suspect" as inquiry notice.

[10] In interpreting section 22008 concerning the meaning of the term "discovery" and phrase "action may be commenced" in subdivisions (c) and (a), respectively, we note that the statute has not been interpreted or even discussed in any California published decision.

12

Third, although we find that the trial court correctly held that CalSTRS had not commenced the action within the three-year statute of limitations under section 22008, we conclude the court erred by rejecting CalSTRS's contention that a portion of its action concerning overpayments was not time-barred upon application of the continuous accrual doctrine. Under that doctrine, claims arising out of incorrect periodic payments, such as the pension payments here, accrue when each payment is due. Accordingly, only CalSTRS's attempts to address incorrect periodic payments that were due more than three years prior to July 6, 2012, were time-barred under section 22008.

B.      Accrual Under Education Code 22008(c), Generally

Section 22008(a) provides that an action seeking adjustments for erroneous payments under the Defined Benefit Program or the Defined Benefit Supplement Program must be brought within "three years after all obligations . . . have been discharged." Under section 22008(c), "[i]f an incorrect payment is due to lack of information or inaccurate information regarding the eligibility of a member, former member, beneficiary, or annuity beneficiary to receive benefits under the Defined Benefit Program or Defined Benefit Supplement Program, the period of limitations shall commence with the discovery of the incorrect payment."

Teachers argued below that "discovery" under section 22008(c) includes not only actual discovery, but circumstances where the party has reason to suspect the existence of the incorrect payment. This is the "discovery rule" exception to the normal rule of accrual of causes of action discussed, *post.* The trial court agreed with CalSTRS's position that only actual knowledge of the incorrect payment triggered the statute of limitations under section 22008(c), holding that "[t]he plain language of the statute requires actual as opposed to inquiry notice." The question being an interpretation of the statutory language, we review the trial court's decision de novo. (*Shamrock Foods*, *supra*, 24 Cal.4th at p. 432.)

13

We are guided by familiar principles of statutory construction, which we have previously summarized—drawing from six California Supreme Court cases—as follows: "In cases of statutory interpretation, 'where the language is clear, its plain meaning should be followed.' We will 'give effect to statutes "according to the usual, ordinary import of the language employed in framing them" ' and 'will apply common sense to the language at hand and interpret the statute to make it workable and reasonable.' Where the language of the statute is clear and unambiguous, we need not look to the Legislature's intent; however, we are not precluded by this ' "plain meaning" rule' from ascertaining whether a literal interpretation of the statute is consistent with its purpose. [¶] The legislative intent of a statute may be revealed from a review of '[b]oth the legislative history of the statute and the wider historical circumstances of its enactment.' 'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' And in cases where the meaning of the statutory language is uncertain, the court ' "may also consider the consequences of a particular interpretation, including its impact on public policy." ' And 'the statute should be interpreted to avoid an absurd result.' " (*Giorgianni v. Crowley* (2011) 197 Cal.App.4th 1462, 1474-1475, internal citations omitted.)

The meaning of the phrase "discovery of the incorrect payment" in section 22008(c) is not so plain as to preclude further inquiry in construing the statute. The term "discovery" is not defined in section 22008 or elsewhere in the Teachers' Retirement Law, and, specifically, is not among the 150-plus definitions of terms and phrases found in the statute. (See §§ 22100 through 22177.) And we are unaware of—and the parties were unable to present us with—any legislative history that would assist us in

interpreting the term "discovery" in the statute.[11]  (Cf. *People v. Zamora* (1976) 18 Cal.3d 538, 561-562 [statute [Pen. Code, § 800] requiring filing of indictment or information for grand theft "within three years after its discovery" construed to mean actual or inquiry notice of the crime; conclusion based in part on legislative history indicating "discovery" was to take same meaning as under statute of limitations for fraud].)  In the absence of legislative history to guide us, we consider how courts have construed and applied the term "discovery" in the context of other statutes of limitations, including consideration of the "discovery rule," which is an important aspect of the statute of limitations body of law.

Our Supreme Court has explained the competing policy interests inherent in a statute of limitations defense.  "A statute of limitations strikes a balance among conflicting interests.  If it is unfair to bar a plaintiff from recovering on a meritorious claim, it is also unfair to require a defendant to defend against possibly false allegations concerning long-forgotten events, when important evidence may no longer be available.  Thus, statutes of limitations are not mere technical defenses, allowing wrongdoers to avoid accountability.  [Citation.]  Rather, they mark the point where, in the judgment of the legislature, the equities tip in favor of the defendant (who may be innocent of

---

[11] Because the parties provided no legislative history in their appellate briefs, we requested supplemental briefing concerning the legislative history of section 22008, specifically in reference to interpreting the phrase "action to be commenced" in subdivision (a) and the term "discovery" in subdivision (c) of the statute.  We appreciate the supplemental letter briefs received from the parties in response to our request.  And we grant Teachers' unopposed request for judicial notice of the legislative materials accompanying their letter brief concerning the legislative history of section 22008. (Evid. Code, §§ 452, 459, subd. (a); see *California School Boards Ass'n v. State Bd. of Educ.* (2010) 186 Cal.App.4th 1298, 1307, fn. 4 [appellate court takes judicial notice of legislative history materials].)  CalSTRS's counsel stated that legislative history offered little guidance as to the meaning of "discovery" in section 22008(c).  Teachers' counsel—although he presented a discussion of the legislative history of section 22008 and its predecessor statutes—did not point to anything in the legislative history that, in our view, would provide guidance as to the meaning of the term "discovery."

15

wrongdoing) and against the plaintiff (who failed to take prompt action): '[T]he period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.' [Citation.]" (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 797 (*Pooshs*), quoting *Johnson v. Railway Express Agency* (1975) 421 U.S. 454, 463-464.)

The date the statute commences is a "[c]ritical" aspect of a statute of limitations analysis. (*Pooshs*, *supra*, 51 Cal.4th at p. 797.) Typically, a party must bring suit within the specified time period after the claim accrues, meaning " 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation. [Citation.]" (*Ibid.*) But the discovery rule is an exception to that general rule of accrual, "postpon[ing] accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.]" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*); see also *Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 803.) Stated otherwise, "the limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person *on inquiry*.' " ' " (*Jolly*, *supra*, 44 Cal.3d at pp. 1110-1111.) A plaintiff has reason to discover a cause of action when he or she " 'has reason at least to suspect a factual basis for its elements,' " that is, the " 'generic' elements of wrongdoing, causation, and harm." (*Fox*, at p. 807.) "[T]he discovery rule 'may be expressed by the Legislature or implied by the courts' and is the ' "most important" ' exception to the general rule that a cause of action accrues when the allegedly wrongful result occurs. [Citations.]" (*Samuels v. Mix* (1999) 22 Cal.4th 1, 9 (*Samuels*); see also *Pooshs*, at p. 797.)

There are many instances in which courts have impliedly incorporated the discovery rule into statutes that provide without qualification that accrual is from the date of injury. This is done " 'to ameliorate a harsh rule that would allow the limitations period for filing suit to expire before a plaintiff has or should have learned of the latent

16

injury and its cause.' [Citation.]" (*Pooshs*, *supra*, 51 Cal.4th at pp. 797-798, quoting *Buttram v. Owens–Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531.) For example, courts have implied a discovery rule for the three-year statute of limitations (Code Civ. Proc., § 338, subd. (b)) for trespass or injury to real property (*Angeles Chemical Co. v. Spencer & Jones* (1996) 44 Cal.App.4th 112, 119); the three-year statute of limitations (Code Civ. Proc., § 338, sub. (g)) for slander of title (*Arthur v. Davis* (1981) 126 Cal.App.3d 684, 690-692); the four-year statute of limitations (Code Civ. Proc., § 343) applicable to, among other claims, breach of fiduciary duty based upon concealment (*Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1230); and the one-year statute of limitations (Code Civ. Proc., § 340, subd. (a)) for a claim based upon statute for a penalty (*Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1248 [claim for statutory penalty based upon lenders' failure to record deed of reconveyance after loan payoff in violation of Civ. Code, § 2941]).

Some statutes of limitation expressly provide for accrual when the plaintiff has *actual or inquiry* notice of the claim. (See, e.g., Code Civ. Proc., § 340.2 [claim for asbestos-related injury must be at the latest, one year after plaintiff "knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure"]; *id.*, § 340.6 [legal malpractice claim commences the earlier of "one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission"].) Other statutes—such as section 22008(c) at issue here—provide that the claim shall be deemed to accrue upon its "discovery" by the aggrieved party, without specifying whether inquiry notice is sufficient to constitute such discovery. (See, e.g., Code Civ. Proc., § 338, subd. (d) [action based upon fraud or mistake accrues from discovery of facts]; *id.*, § 339, subd. (1) [action on oral contract accrues from discovery of loss].)

17

One statute using the word "discovery" to identify the date of accrual is Code of Civil Procedure section 338, subdivision (d). It provides that the claim shall "not to be deemed to have accrued until the discovery, by the aggrieved party . . . of the facts constituting the fraud or mistake." (*Ibid.*) " 'Literally interpreted, this language would give the plaintiff an unlimited period to sue if [he or s]he could establish ignorance of the facts.' " (*Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1525.) Although the statute does not expressly provide that the claim will accrue based upon either actual *or inquiry* notice of the claimant, California courts have long construed it in such a fashion. Under subdivision (d) of Code of Civil Procedure section 338, a "plaintiff must affirmatively excuse his [or her] failure to discover the fraud within three years after it took place, by establishing facts showing that he [or she] was not negligent in failing to make the discovery sooner and that he [or she] had no actual or presumptive knowledge of facts sufficient to put him [or her] on inquiry. [Citations.]" (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437; see also *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874-875.)

A similar analysis has been applied to Code of Civil Procedure section 339, subdivision (1). It calls for a two-year statute of limitations, and provides, in part, that a cause of action based "upon a contract, obligation or liability not founded upon an instrument of writing . . . shall not be deemed to have accrued until the discovery of the loss or damage suffered." (*Ibid.*) Courts have applied the discovery rule to varying claims governed by this statute, resulting in the limitation period commencing when the plaintiff discovers or reasonably should have discovered the harm was caused by the defendant. (See, e.g., *William L. Lyon & Associates, Inc. v. Superior Court* (2012) 204 Cal.App.4th 1294, 1314 [negligence claim against broker]; *Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 942-943 [accounting malpractice claim]; *Seelenfreund v. Terminix of Northern Cal., Inc.* (1978) 84 Cal.App.3d 133, 138-139 [negligence claim against pest control inspector].)

The court in *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 948-953 (*Debro*) reached a similar result in determining whether the plaintiff's qui tam lawsuit to recover civil penalties and damages under the False Claims Act was time-barred under Government Code section 12654, subdivision (a). The statute provides that "[a] civil action under [Government Code] Section 12652 may not be filed more than three years after the date of discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances . . ." The *Debro* court held that the statute was satisfied by either actual *or inquiry* notice, relying in part upon judicial construction of similar "discovery" language of Code of Civil Procedure section 338, subdivision (d). (*Debro*, at p. 950.) It concluded that "this interpretation balances the policy of avoiding stale lawsuits with the policy of providing a reasonable time for a plaintiff to discover a false claim. Furthermore, our interpretation is consistent with the tenets of Civil Code section 19 . . . . Consequently, circumstances which put a reasonable person on inquiry of a false claim are constructive notice of the false claim itself." (*Ibid.*)

We are persuaded by authorities that have construed "discovery" statutes similar to section 22008(c) here—such as Code of Civil Procedure sections 338, subdivision (d) and 339, subdivision (1), and Government Code section 12654, subdivision (a)—as providing that the limitations period commences when the plaintiff has knowledge of the facts supporting the claim, either based on actual *or inquiry* notice. This construction subserves the policies underlying the statute of limitations. It is consistent with the principle that "statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights; therefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he [or she] could reasonably be expected to discover its existence. [Citations.]" (*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 297.) Applying the inquiry notice rule here also promotes the policy of preventing the unfairness of "requir[ing] a defendant to defend against possibly false allegations

19

concerning long-forgotten events, when important evidence may no longer be available."
(*Pooshs*, *supra*, 51 Cal.4th at p. 797; see also *Bernson v. Browning-Ferris Industries*
(1994) 7 Cal.4th 926, 935.)

Moreover, we conclude that interpreting section 22008(c) to incorporate the
discovery rule does not place an undue burden on the party claiming the existence of an
incorrect benefit payment. "Every person who has actual notice of circumstances
sufficient to put a prudent [person] upon inquiry as to a particular fact, has constructive
notice of the fact itself in all cases in which, by prosecuting such inquiry, he [or she]
might have learned such fact." (Civ. Code, § 19.) Charging CalSTRS here, as claimant,
with knowledge of an overpayment based upon inquiry notice where the entity, in the
exercise of reasonable diligence, should have discovered it, is entirely proper. (See
§ 22250, subd. (b) [CalSTRS Board has fiduciary duty to use "care, skill, prudence, and
diligence" in management of system]; see also *Duarte*, *supra*, 232 Cal.App.4th at p. 385
[Board has duty to ensure payment to members of full earned benefits and to avoid
payment of benefits not earned].)

The trial court relied upon *Eisenbaum v. Western Energy Resources, Inc.* (1990)
218 Cal.App.3d 314 (*Eisenbaum*) in support of its holding that section 22008(c) required
actual knowledge of the incorrect payment. There, the plaintiff brought suit based upon
an unlawful sale of securities in violation of Corporations Code section 25510, such suit
being authorized under Corporations Code section 25503. (*Eisenbaum*, at p. 318.) The
appellate court addressed whether the plaintiff's claim under Corporations Code section
25503 was time-barred under the applicable statute of limitations, which provided that
such claim be " 'brought before the expiration of two years after the violation upon which
it is based or the expiration of one year after the discovery by the plaintiff of the facts
constituting such violation, whichever shall first expire.' " (*Eisenbaum*, at p. 321,
quoting Corp. Code, § 25507, subd. (a), italics omitted.) The court in *Eisenbaum*
concluded that the statute required the plaintiff's actual knowledge of the violation: "By

20

its plain language, the statute requires actual knowledge, not just 'inquiry notice.' " (*Eisenbaum*, at p. 325.)

*Eisenbaum*, *supra*, 218 Cal.App.3d 314 is not persuasive. In *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408 (*Deveny*), the court chose not to follow *Eisenbaum*. In *Deveny*, the court was concerned with the statute of limitations under former Corporations Code section 25506, which contained language similar to that found in Corporations Code section 25507, subdivision (a) at issue in *Eisenbaum*. (*Deveny*, at p. 419.)[12] The court in *Deveny* concluded, following several federal decisions which held that under the language of former Corporations Code section 25506 ("discovery by the plaintiff of the facts constituting the violation"), inquiry notice was sufficient to trigger the statute of limitations. (*Deveny*, at pp. 419-423.) The *Deveny* court reasoned, in part, that (1) *Eisenbaum* was distinguishable because it involved claims against a fiduciary, and (2) *Eisenbaum*'s holding that actual notice was required under Corporations Code section 25507, subdivision (a) was mere dicta. (*Deveny*, at pp. 421-422.) Moreover, the court explained that former Corporations Code section 25506—as well as Corporations Code section 25507—"postdated other statutes of limitations that included the term 'discovery' and that had been judicially construed as establishing an inquiry notice standard. (E.g., Code Civ. Proc., § 338, subd. (d); Pen.Code §§ 801.5, 803, subd. (c).) . . . 'Given the Legislature's presumed understanding of the judicial interpretation of the term "discovery" in other statutes of limitation, it is reasonable to assume that it would have used a word other than "discovery" if it intended for the limitations period to commence only upon actual knowledge of a violation. [Citation.]' " (*Deveny*, at pp. 422-423,

---

[12] "No action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 insofar as they related to those sections) unless brought before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire." (Former Corp. Code, § 25506, amended by Stats. 2004, ch. 575, § 3, p. 4614.)

21

quoting *Debro*, *supra*, 92 Cal.App.4th at p. 953; see also *State ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 415-417 [Ins. Code, § 1871.7 limitations period of "three years after the discovery of the facts constituting the grounds for commencing the action" construed to include knowledge based upon inquiry, as well as actual notice].)

We agree with the analysis in *Deveny* and apply it here. Regardless of the merits of *Eisenbaum*'s conclusion that Corporations Code section 25507, subdivision (a) requires actual notice, there is no reasoned basis for applying that conclusion here to section 22008(c). A claim based upon a violation of securities laws by a fiduciary is far different from a claim to adjust an incorrectly calculated pension benefit payment. Moreover, here, as was true in *Deveny*, the "discovery" language of section 22008 first appearing in its predecessor statute in 1988[13] was created long after "other statutes of limitations that included the term 'discovery' and that had been judicially construed as establishing an inquiry notice standard. [Citations.] 'Given the Legislature's presumed understanding of the judicial interpretation of the term "discovery" in other statutes of limitation, it is reasonable to assume that it would have used a word other than "discovery" if it intended for the limitations period to commence only upon actual knowledge of ' " the existence of the incorrect payment. (*Deveny*, *supra*, 139 Cal.App.4th at pp. 422-423.) Furthermore, although we acknowledge that the Committee reached a contrary conclusion—finding that "discovery" under section 22008(c) requires actual knowledge of the incorrect payment—it is ultimately this court's obligation, rather than the administrative agency, " ' "to lay down the governing principles of law

---

[13] See former section 22007, subd. (c) (Stats. 1988, ch. 739, § 1, p. 2437): "In cases where the payment is erroneous due to lack of information or inaccurate information regardint the eligibility of a member, disabilitant, retirant, beneficiary, child, or dependent parent to receive benefits under this part, the period of limitation shall commence with the discovery of the erroneous payment."

(*Garamendi*, *supra*, 131 Cal.App.4th at p. 41), "to independently judge the text of the statute" (*Yamaha Corp., supra*, 19 Cal.4th at p. 7), and to construe the statute, using the "agency's interpretation [as] one among several tools available" (*ibid.*).

We therefore hold that the three-year limitations period for asserting a claim related to an incorrect payment due to a lack of information or inaccurate information under section 22008(c) commences upon actual or inquiry notice, i.e., when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the incorrect payment.

### C. Accrual of CalSTRS's Claim Here

#### 1. *Background*

Using the date upon which CalSTRS *actually discovered* the existence of the overpayments to Teachers as the date of commencement of the statute of limitations—a legal standard we have determined to be erroneous—the trial court concluded that CalSTRS "discovered" the facts regarding the incorrect payments to Teachers on or about August 18, 2005. This was the date a memorandum was sent to MCOE from Cindy Fellows, a District budget analyst (the Fellows memorandum).

The Fellows memorandum, addressed "To Whom it May Concern," was sent to the Monterey County entity, MCOE, based upon the understanding that CalSTRS did not want communications to go directly to it, but rather wanted them to be sent to MCOE. The memorandum read, in pertinent part: "It has been brought to our attention that there are some questions regarding how the [D]istrict reports a sixth period class. In 1998, the Salinas Valley Federation of Teachers' Union (SVFT) negotiated to have a separate salary schedule for those certificated employees who worked longer days. [¶] The option is available to the whole certificated class of employees. There are approximately 40 to 50 employees each year that request to work a sixth period option . . . . [¶] Some schools are on a block schedule in which teachers work a total of 5 periods during the year. This is usually 3 periods the first semester and 3 the second semester, which results in a high

23

retirement[] base since they worked the extra period the second half of the year. [¶] One of our employees, who retired this year, worked the extra block the second semester and when her retirement allowance was sent to her, it was based on the 1st semester earnings and not the second for the years 2003 -2004. Any help in this matter would be appreciated . . . . [¶] Attached are the AB1200, union contract and salary schedules for 2003-2004 which reflect the SVFT and the [D]istrict's agreement to implementing the sixth period salary schedule. (AR 3203.)"

The trial court concluded that the Fellows memorandum provided actual notice to MCOE. Further, it rejected CalSTRS's contention that the memorandum was of no consequence to the question of notice, because there was no evidence that MCOE ever forwarded the document to CalSTRS. The trial court concluded that from the evidence presented at the administrative hearing, MCOE was the ostensible agent of CalSTRS. Reasoning that notice given to the agent is chargeable to the principal, the court concluded that CalSTRS was charged with knowledge of the information imparted to MCOE in the Fellows memorandum.

CalSTRS challenges these findings, contending that it did not discover the overpayment issue until more than three years later, on December 1, 2008, when its outside auditor, MHM, issued the final audit report. It contends that (1) there was no evidence the Fellows memorandum was actually received by MCOE or CalSTRS, (2) there was no evidence that MCOE was CalSTRS's agent, and (3) the memorandum, in any event, did not give notice that incorrect payments were being made to Teachers. We address these three contentions below.

### 2. *The Claim Accrued August 18, 2005*

#### a. Receipt

Fellows testified at the administrative hearing that she sent the memorandum to MCOE along with its attachments. CalSTRS points to no evidence (e.g., testimony from an MCOE representative) disputing MCOE's receipt of the Fellows memorandum.

24

Moreover, a letter properly addressed and mailed is presumed to have been received by the addressee. (Evid. Code, § 641; see also *Bank of America v. Giant Inland Empire R.V. Center, Inc.* (2000) 78 Cal.App.4th 1267, 1280 [respondent presented no evidence to rebut presumption it received mailed notice].) The trial court's finding that MCOE received the Fellows memorandum is supported by substantial evidence. (*Fukuda*, *supra*, 20 Cal.4th at p. 824; *JKH Enterprises, supra,* 142 Cal.App.4th at p. 1058.) For the reasons we discuss next, because the court was justified in concluding that MCOE received the memorandum, it is immaterial whether CalSTRS itself received it.

### b. Agency

The trial court cited certain evidence in the administrative record establishing that MCOE was the agent of CalSTRS. As recited by the court, "CalSTRS['s] retirement counselors would meet teachers at the relevant county's office of education, where counselors would access CalSTRS['s] data through CalSTRS['s] computer, both to prepare for meetings with teachers and to assist those teachers with retirement calculations. [¶] Moreover, school districts were specifically instructed to contact their local county office of education with questions to ensure that their decisions were consistent with the law. And, while CalSTRS provided guidance on retirement issues through administrative directives, school districts were directed to contact their county's office of education if they had questions not covered in any such directive. Only if a county office of education could not answer a question was that question forwarded to CalSTRS. Similarly, teachers were advised by CalSTRS['s] retirement counselors to direct questions to CalSTRS through their school districts. The districts would then forward questions to their county's office of education. CalSTRS required questions to be routed through the county offices of education for CalSTRS['s] convenience. CalSTRS explained that there are approximately 1,600 districts statewide and that CalSTRS['s] staff is too small to respond to the high volume of inquiries it receives from these districts."

25

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) An agency relationship may exist if it is either one that is actual ostensible. (Civ. Code, § 2298.) An agency is actual when the agent is in fact employed by the principal. (Civ. Code, § 2299.) " 'An agency is ostensible when a principal causes a third person to believe another to be his agent, who is really not employed by him. [Citation.]' " (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403, citing Civ. Code, § 2300.)

A party claiming that an ostensible agency exists must satisfy three requirements. First, it must show that its dealings with the purported agent were based upon a reasonable belief in the agent's authority. Second, the principal must have been responsible through some act or neglect on its part in creating the party's reasonable belief in the agent's authority. Third, the party must not have been negligent in holding its belief. (*Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399.) Ostensible agency cannot be based solely upon representations or conduct of the purported agent; rather, the statements or acts causing the belief in the existence of such agency are generally those of the principal. (*Lindsay-Field v. Friendly* (1995) 36 Cal.App.4th 1728, 1734.) " 'Liability of the principal for the acts of an ostensible agent rests on the doctrine of "estoppel," the essential elements of which are representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury. [Citation.]' [Citation.]" (*Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 747 [ostensible agency based on principal's representations to public in general, on which the plaintiff relied].)

We conclude that substantial evidence supported the trial court's finding that MCOE was "[a]t minimum," the ostensible agent of CalSTRS. This evidence included that (1) CalSTRS's counselors met with teachers at MCOE offices, where the counselors would access CalSTRS's data through its computer to assist teachers with retirement

26

calculations; (2) school districts were instructed to communicate any questions to their county education office so that district decisions were consistent with the law; (3) school districts were instructed to make any inquiries about CalSTRS's administrative directives to their local county education office, not CalSTRS; (4) CalSTRS's retirement counselors instructed teachers to contact their school district—which in turn contacted its local county education office—concerning questions the teachers had of CalSTRS; and (5) CalSTRS's requirement that questions be directed to local county education offices was for CalSTRS's convenience in light of the number of school districts statewide (and, consequently, the potential volume of teacher and other inquiries).  Indeed, while CalSTRS argues conclusorily on appeal that "suggesting MCOE is CalSTRS['s] agent stretches the imagination," it cites no evidence from the record supporting its position.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["conclusory presentation" in appellate brief may be treated as an abandoned issue].)

A principal is deemed to have notice of whatever its agent has notice of and should reasonably communicate to the principal.  (Civ. Code, § 2332; see *McKenney v. Ellsworth* (1913) 165 Cal. 326, 329.)  "[T]he principal is chargeable with, and is bound by the knowledge of, or notice to, [its] agent, received while the agent is acting within the scope of [its] authority, and which is in reference to a matter over which [its] authority extends.  [Citations.]" (*Trane Co. v. Gilbert* (1968) 267 Cal.App.2d 720, 727.)  "One who acts through an agent will be presumed to know all that the latter learns concerning the transaction, whether it is actually communicated to the principal or not.  There is no difference in this respect between actual and constructive notice.  It is of no avail that the agent failed to communicate to his principal what he had ascertained." (*Shapiro v. Equitable Life Assur. Soc. of U.S.* (1946) 76 Cal.App.2d 75, 87.)  Included among the types of information that may be imputed from agent to principal are facts used to determine the date of accrual of a statute of limitations.  (*Santillan v. Roman Catholic Bishop of Fresno* (2008) 163 Cal.App.4th 4, 11.)

27

Here, information concerning members' pension benefits was clearly matter of the type that should have been reasonably communicated from the agent, MCOE, to its principal, CalSTRS. Accordingly, whatever information that was imparted in the Fellows memorandum to MCOE was data CalSTRS was presumed to know as well.

c.     Notice

As noted, the trial court concluded that the Fellows memorandum provided actual notice to MCOE, as ostensible agent of CalSTRS. But applying the correct standard for determining accrual of the statute of limitations under section 22008(c), the proper question is whether the memorandum provided actual *or inquiry* notice to MCOE of Teachers' incorrect payments.

The Fellows memorandum alerted MCOE "that there are some questions regarding how the [D]istrict reports a sixth period class." Fellows explained that as a result of union negotiations, "a separate salary schedule" was established for teachers working longer days, and approximately 40 to 50 teachers in the District had elected to work longer days. She explained further that in the case of some schools that were on a block schedule in which teachers ordinarily worked five periods a year, where an individual teacher elected to work an extra (sixth) period, this "result[ed] in a high retirement[] base since [the teacher] worked the extra period the second half of the year." Fellows advised that one teacher who had "worked the extra block the second semester" had her retirement allowance calculated based upon her first semester earnings, implying in the memorandum that this calculation was in error. And Fellows requested "[a]ny help" in the matter, attaching to her memorandum the union contract and 2003-2004 salary schedules that "implement[ted] the sixth period salary schedule."

There is some merit to CalSTRS's position that the memorandum did not provide *actual notice* of the miscalculation of Teachers' retirement benefits. Fellows did not identify any of the Teachers by name nor did she specify any particular circumstances involving them that may have resulted in their pension benefits having been incorrect.

28

Indeed, eight of the eleven Teachers had not even retired as of the date of the Fellows memorandum; therefore, such specification, as to eight Teachers, would have been impossible.

But the Fellows memorandum gave ample information to MCOE—and, under agency principles, to CalSTRS as well—giving rise to inquiry notice of the existence of possible errors in the calculation of retirement benefits for certain teachers who had elected to work an additional (sixth) period. Under the inquiry notice standard that is the basis for the discovery rule, "the limitations period begins once the [claimant] ' " 'has notice or information of circumstances to put a reasonable person *on inquiry* . . . .' " ' [Citations.] A [claimant] need not be aware of the specific 'facts' necessary to establish the claim . . . Once the [claimant] has a suspicion of wrongdoing, and therefore an incentive to sue, [it] must decide whether to file suit or sit on [its] rights. So long as a suspicion exists, it is clear that the [claimant] must go find the facts; [it] cannot wait for the facts to find [it]." (*Jolly*, *supra*, 44 Cal.3d at pp. 1110-1111, original italics.)

Here, at minimum, CalSTRS was made aware, through the Fellows memorandum, (1) of a potential problem with respect to the manner in which retirement benefits were being calculated for District teachers who had elected to work an extra period; (2) that, based upon a union contract dating back a number of years, "a separate salary schedule" had been established in the District for those teachers; and (3) that there was at least the assumption that such class of teachers, upon retirement, were entitled to "a high[er] retirement[] base" because of having worked an extra period. CalSTRS—particularly in light of its statutory fiduciary duties, including its duty to exercise "due care, skill, prudence, and diligence" (§ 22250, subd. (b)) and to ensure payment to members of full earned benefits and to avoid payment of benefits not earned (*Duarte*, *supra*, 232 Cal.App.4th at p. 385)—had, through the Fellows memorandum, " ' " ' 'notice or information of circumstances to put a reasonable person *on inquiry*' " ' " (*Jolly*, *supra*,

29

44 Cal.3d at pp. 1110-1111) that certain retired teachers in the District were having their benefits incorrectly calculated.[14]

Accordingly, notwithstanding the trial court's error in concluding that CalSTRS had *actual notice* on August 18, 2005, CalSTRS was placed on *inquiry notice* as of that date through the Fellows memorandum, thus triggering the three-year statute of limitations under section 22008(c).[15] We will next determine whether CalSTRS commenced an "action" within that three-year limitations period.

---

[14] In its appellate briefs, CalSTRS asserts that the Fellows memorandum "[a]t most, . . . gives rise to inquiry notice, which is insufficient to constitute 'actual notice.' " Counsel for CalSTRS reiterated this position at oral argument, stating that he did not concede the Fellows memorandum gave rise to inquiry notice. While not a concession, CalSTRS's position at least recognizes that the memorandum provided *some* information that *may have* been sufficient to put the recipient on inquiry notice.

[15] Teachers argued below that CalSTRS discovered the incorrect payments on dates earlier than August 18, 2005: in 1999 (when the District and the teachers' union [SVFT] entered into a collective bargaining agreement); in 2002 (when a CalSTRS counselor, Ken Thomas, informed CalSTRS of the District's dual salary schedules used for retirement); and in 2003 (when a former teacher in the District, Michael Welsh, retired, became a CalSTRS counselor, and received retirement benefits based upon compensation earned while teaching an additional (sixth) period. The trial court did not decide whether CalSTRS had actual notice of the incorrect payments prior to August 18, 2005. Instead, it concluded that, because CalSTRS had actual notice at least as early as August 2005, and that this was more than three years before CalSTRS brought an "action," it was "unnecessary" to reach Teachers' arguments. Because we have held that the trial court erred in concluding that actual discovery is required to trigger the statute of limitations under section 22008(c), we would ordinarily require the trial court on remand to consider, applying the correct legal standard, whether CalSTRS had actual or inquiry notice of the incorrect payments at any time prior to August 2005 as urged by Teachers. But because we conclude that CalSTRS brought an "action" more than three years after inquiry notice of the issue (through the Fellows memorandum), it is unnecessary for the trial court to consider these alternative dates on remand.

30

D "Action" Commenced Under Education Code Section 22008(a)

*1. Introduction*

Under section 22008(a), "*[n]o action may be commenced* by or against the board, the system, or the plan more than three years after all obligations to or on behalf of the member, former member, beneficiary, or annuity beneficiary have been discharged." (Italics added.)  The parties advanced various arguments below concerning when, in this instance, CalSTRS "commenced" an "action" to satisfy the three-year limitations period. Urging the earliest date, CalSTRS argued below—and renews the argument on appeal— that it took "action" within the meaning of section 22008(a) on July 30, 2010, when it mailed its final audit report.[16]  Teachers claim a date nearly two years later—July 6, 2012—contending that CalSTRS initiated an "action" when it filed a statement of issues in the administrative proceeding.  The trial court selected neither date.  Instead, it concluded that CalSTRS "commenced" an "action" on April 1, 2012, when it "took 'corrective action' " by adjusting downward Teachers' monthly retirement benefits to address both prospectively and retrospectively the error in calculating those benefits.  We will discuss below section 22008(a) and determine the appropriate date that CalSTRS "commenced" an "action" in this instance.[17]

---

[16] It is apparent from the record that on July 30, 2010, CalSTRS (1) sent the final audit report to the District along with an explanatory letter, and (2) sent letters to Teachers advising them that it had completed its final audit report and informing Teachers of its substance (but not enclosing it).  For simplicity of discussion here, we will refer generally to July 30, 2010, as the date CalSTRS sent the final audit report to the District and Teachers.

[17] We note that all three dates are more than three years after August 18, 2005, the date we have determined to have been the date of accrual of CalSTRS's claim under section 22008(c).  But the date when the "action was commenced" by CalSTRS is not an academic matter.  Because we conclude, *post*, that CalSTRS is not barred from pursuing *any* action on *all* past or future overpayments, regardless of when they became (or become) due, the date the action was commenced is significant to the issue of whether the statute of limitations bars CalSTRS from taking action as to specific periodic monthly benefit payments.

31

## 2. Section 22008(a)

Neither the phrase "action may be commenced" nor the term "action" is defined in section 22008 or elsewhere in the Teachers' Retirement Law. (See §§ 22100 through 22177 [defining various terms and phrases].) And, as is evident from the submissions of the parties, there is no legislative history to guide us in interpreting section 22008(a).[18] Therefore—although we acknowledge that "[s]tatutes of limitations found in the Code of Civil Procedure" are inapplicable to administrative proceedings (*Little Co. of Mary Hosp. v. Belshe* (1997) 53 Cal.App.4th 325, 329)—our analysis here is assisted by considering the more familiar provisions of the Code of Civil Procedure that specify applicable periods of time for bringing suit.

Code of Civil Procedure section 312 provides that "[c]ivil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." Title 2 of Part 2 of the Code of Civil Procedure goes on to provide numerous (approximately 40) statutes specifying the limitation of actions with respect to various types of civil claims. The term "civil action" in Code of Civil Procedure section 312 is not defined in Part 2, Title 2, of the Code of Civil Procedure. (See Code Civ. Proc., §§ 312-366.3.) But "action" is defined elsewhere in the Code of Civil Procedure as "an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) And "civil action" is defined as one that "is prosecuted by one party against another for the declaration, enforcement, or protection of a right, or the redress or prevention of a

---

[18] See footnote 11, *ante*. CalSTRS stated in its letter brief that legislative history provided little assistance concerning the meaning of the phrase "action may be commenced" in section 22008(a). Teachers did not identify anything in the legislative history that would aid us in interpreting the phrase "action may be commenced."

wrong." (Code Civ. Proc., § 30.) Code of Civil Procedure section 363 broadens the definition of "action" under Part 2, Title 2, stating that the term "is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature." (See *Allen v. Humboldt County Board of Supervisors* (1963) 220 Cal.App.2d 877, 884 [statutes of limitations under Code of Civil Procedure apply to special proceedings such as certiorari, mandamus and prohibition].) And such civil actions (including special proceedings) "are *commenced* when the plaintiff's complaint or petition is filed with the court. [Citations.]" (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 411, (*Garcia*), fn. omitted, italics added.)

Applying the Code of Civil Procedure by analogy here to the statute of limitations specified in the Education Code is a challenging task. We will nonetheless proceed with considering whether any of the three benchmarks respectively identified by the parties and the trial court is the date that CalSTRS "commenced" an "action" within the meaning of section 22008(a).

### 3. *July 30, 2010—Mailing of Final Audit Report*

CalSTRS argues that the mailing of its final audit report to the District and Teachers on July 30, 2010, constituted commencement of an "action" relative to the incorrect payments. CalSTRS apprised each of the Teachers in separate letters that it had concluded from its final audit that the District had "incorrectly reported (coded) your sixth period teaching assignment (extra duty) earnings totaling approximately [] as creditable compensation to the Defined Benefit (DB) Program for the [] school year ending in your retirement. Under state law, these extra duty assignment payments should have been credited to the Defined Benefit Supplement (DBS) program, thus it does not count toward the calculation of your DB retirement allowance. These reporting errors caused your monthly retirement allowance to be overstated by approximately $[] from [], your retirement benefit effective date." Each letter advised further that CalSTRS was entitled under the law to recover the overpayment by reducing future payments to each of

the Teachers by no more than five percent, because the overpayment was due to error by the school system, but CalSTRS had requested that the District reimburse the overpayments on behalf of each of the Teachers. Lastly, CalSTRS advised each of the Teachers that if he or she disagreed with its determination, he or she was required to appeal it through an administrative hearing process within 90 days of the letter.[19]

CalSTRS asserts that by sending the final audit report, it commenced the administrative proceeding (i.e., commenced an "action"), because Teachers, in response to the final audit, were required, in peril of losing valuable rights (i.e., the right to contest the audit or require an administrative hearing), to request an administrative hearing within 90 days. (See Cal. Code Regs., tit. 5, § 27102, subd. (c).)[20] CalSTRS, accordingly, takes issue with the trial court's conclusion that "[t]he final audit report letter is analogous to a demand letter made by a party in hopes of avoiding civil litigation. [CalSTRS] demanded that the District take certain action, but a demand is not action."

While the trial court's demand letter analogy is imperfect, we conclude that CalSTRS's act of sending the final audit to Teachers did not constitute the commencement of an "action" under section 22008(a). The final audit certainly identified CalSTRS's position regarding the calculation of Teachers' monthly retirement benefits. Its mailing, however, did not initiate a proceeding of any kind. It was not the

---

[19] Similarly, in its letter to the District enclosing the final audit report, CalSTRS advised that the District had "[i]ncorrectly reported (coded) 15 members' extra duty earnings to [the] Defined Benefit Program rather than to the Defined Benefit Supplement Program," and the District could "submit an appeal through the administrative hearing process" within 90 days of the letter.

[20] "If an applicant [member, former member, participant, former participant, or beneficiary] or entity disagrees with the final audit Determination, the applicant or entity may request an administrative hearing . . . within ninety (90) days from the date of the final audit Determination . . . . If an applicant or entity fails to request an administrative hearing within the time prescribed, such Determination or action shall be final and the right to an administrative hearing shall be deemed waived." (Cal. Code Regs., tit. 5, § 27102, subd. (c).)

34

commencement of a judicial or administrative proceeding against Teachers concerning the overpayment controversy. To conclude otherwise would subvert any reasonable construction of the statutory phrase "action may be commenced." (See *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490: "Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute.")

Moreover, accepting the position that the final audit's mailing was the commencement of an "action" would permit CalSTRS, in theory, to delay for an indeterminate time taking any action to address alleged overpayments to a retiree, such as by reducing his or her monthly benefits or bringing an action for restitution of prior overpayments. Such a position would permit CalSTRS, in an extreme case, to lull the retiree for years into a false belief that CalSTRS would take no action to recoup the alleged overpayments or reduce future payments. This consequence would run contrary to the principle that " 'establish[ing] any particular limitations period under any particular statute of limitations entails the striking of a balance' between the public policy favoring extinction of stale claims and that favoring resolution of disputes on their merits. [Citation.]" (*Samuels*, *supra*, 22 Cal.4th at p. 13.)

### 4. *April 1, 2012—Reduction of Monthly Benefits*

On March 2, 2012, CalSTRS wrote to each of the Teachers to advise that, since the date it had issued its final report, "the District ha[d] not submitted the required corrections" to Teachers' reported earnings to the Defined Benefit Program; "accordingly, CalSTRS will be making the corrections and adjusting your benefit beginning with your April 1, 2012 retirement benefit. This adjustment will result in a reduction to your ongoing retirement allowance. [The adjustment] will also create an overpayment in benefits previously paid to you." The letters went on to advise Teachers that CalSTRS would collect prior overpayments at a rate of five percent from future

35

payments. On March 16, 2012, CalSTRS sent separate letters to Teachers advising each of them of the specific overpayment amounts and the reduced monthly benefits that would be paid, commencing with the April 1, 2012 benefit payment.

The trial court concluded that CalSTRS's act of adjusting downward Teachers' respective monthly pension benefits on April 1, 2012, constituted commencing an "action" under section 22008(a). In so holding, the court relied on section 24616, which provides that "[a]ny overpayment made to or on behalf of any member . . . shall be deducted from any subsequent benefit that may be made payable under the Defined Benefit Program . . . , except as provided in Section 24616.5. These deductions shall be permitted concurrently with any suit for restitution, and recovery of overpayment by adjustment shall reduce by the amount of the recovery the extent of liability for restitution." The trial court reasoned that under section 24616, CalSTRS was authorized to use " 'self-help' by adjusting benefit payments to account for overpayments." The court held that CalSTRS's doing so here, effective April 1, 2012, was " 'corrective action' " that constituted "action" within the meaning of section 22008(a) that tolled the statute of limitations. But, the court concluded further, because "[t]his action was taken more than three years" after CalSTRS received actual notice of the overpayments, CalSTRS's claim was time-barred.

We respectfully disagree with the trial court. CalSTRS's reduction of future monthly payments to Teachers was not the commencement of an "action" relative to the incorrect payments. While such conduct is indeed a type of "action" in the broadest sense of the word (see Merriam-Webster's Collegiate Dict. (11th ed. 2009) p. 12, col. 2) ["**action** . . . **5 a**: a thing done: DEED"]), the unilateral reduction of Teachers' monthly payments was not the commencement of an "action" analogous to the initiation of a lawsuit satisfying the statute of limitations under the Code of Civil Procedure. (See Code Civ. Proc., § 30 ["[a] civil action is prosecuted by one party against another for the declaration, enforcement, or protection of a right, or the redress or prevention of a

36

wrong"].)[21]  We thus conclude that CalSTRS's reduction of Teachers' respective monthly payments, effective April 1, 2012, based upon recalculated benefit amounts, together with a deduction for prior overpayments, did not constitute the commencement of an "action" under section 22008(a).

### 5. *July 6, 2012—Filing of Statement of Issues*

On July 6, 2012, CalSTRS filed a nine-page pleading entitled "Statement of Issues" with the Office of Administrative Hearings.  In the pleading, CalSTRS— identifying itself as "Complainant"—(1) identified the parties, including a specification of the retirement dates of each of the 11 Teachers (each named as a "Respondent" in the pleading); (2) presented a statement of facts; and (3) provided a discussion concerning the grounds upon which CalSTRS asserted that its position should be upheld.

Teachers urge that the filing of the statement of issues was conduct that qualified as CalSTRS's commencement of an "action" to satisfy section 22008.  They argue that "[l]ike a complaint, the filing of a 'statement of issues' is the legal action that creates the jurisdiction of the administrative court to hear the legal dispute between the governmental agency and the party affected."  Teachers' position has merit.

The dispute here was subject to resolution under the Administrative Procedure Act.  (See Gov. Code, §§ 11340 to 11529, incl.)  A party aggrieved by a final audit determination of CalSTRS is entitled to make a timely request for an administrative hearing, as Teachers did here.  (See Cal. Code Regs., tit. 5, § 27102, subd. (c).)  The

---

[21] We note further that even were we to deem CalSTRS's deduction of prior overpayments in Teachers' monthly payments commencing April 1, 2012, as the commencement of an "action," this conclusion would address only *one aspect* of CalSTRS's conduct.  CalSTRS both deducted prior overpayments *and* issued reduced current monthly payments based upon a recalculation of Teachers' respective monthly benefits.  While section 22616 authorized CalSTRS to deduct from future benefits any amounts previously overpaid, that statute did not address CalSTRS's recalculation and reduction of future monthly benefits.

disposition of such a request is governed by section 22219, subdivision (b) (Cal. Code Regs., tit. 5, § 27103), which statute provides that the administrative hearing "shall be conducted in accordance with [Gov. Code, § 11500 et seq.], relating to administrative adjudication, and the board shall have all of the powers granted in that chapter." Under the Administrative Procedure Act, the document that initiates the administrative adjudicative proceeding is the statement of issues. (*California Radioactive Materials Management Forum v. Department of Health Services* (1993) 15 Cal.App.4th 841, 855, fn. 9, disapproved on other grounds by *Carmel Valley Fire Protection Dist. v. State* (2001) 25 Cal.4th 287, 305, fn. 5.)[22]

We conclude that, in the context of satisfying a prescribed statute of limitations, the filing of a statement of issues to initiate administrative proceedings is the closest analogue to the filing of a civil complaint. Just as a plaintiff commences a civil action (including a special proceeding) by filing a complaint or a petition (*Garcia*, *supra*, 231 Cal.App.4th at p. 411), an agency "initiates" (or "commences") an administrative adjudicatory proceeding by filing a statement of issues pursuant to Government Code section 11504. (See *Glen Hill Farm, LLC v. California Horse Racing Bd.* (2010) 189 Cal.App.4th 1296, 1301, fn. 3; *Capitol Racing v. California Horse Racing Bd.* (2008) 161 Cal.App.4th 892, 897.) And the agency, in initiating the proceedings by filing the statement of issues, is "designated as the 'complainant.' " (Cal. Administrative Hearing

---

[22] The relevant statute reads in part as follows: "A hearing to determine whether a right, authority, license or privilege should be granted, issued or renewed shall be *initiated* by filing a statement of issues. The statement of issues shall be a written statement specifying the statutes and rules with which the respondent must show compliance by producing proof at the hearing and, in addition, any particular matters that have come to the attention of the initiating party and that would authorize the denial of the agency action sought." (Gov. Code. § 11504, italics added.) " ' "Respondent" means any person . . . against whom a statement of issues is filed pursuant to [Gov. Code] Section 11504.' " (*Savelli v. Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 130, fn. 1, quoting Gov. Code, § 11500, subd. (c).)

38

Practice (Cont.Ed.Bar 2d ed. 2016) § 3.21, p. 3-18.)  We acknowledge the trial court's concern that the comparison of the filing of a civil action with the service of a statement of issues under Government Code section 11504 is imperfect—because CalSTRS's filing of the statement of issues was triggered by Teachers' prior request for a hearing and thus, as the trial court held, "[CalSTRS's] procedural posture was more akin to a defendant than to a plaintiff."  But we nonetheless conclude that, pursuant to Government Code section 11504, the filing of that pleading was the commencement of an "action" under section 22008(a).  (See Cal. Admin Hearing Practice, *supra*, § 3.26, p. 3-19 [filing date of pleading such as statement of issues "may become an important question if the statute of limitations defense is raised"].)

We therefore hold the filing by CalSTRS of the statement of issues with the Office of Administrative Hearings constituted the commencement of an "action" under section 22008(a).

### E. Whether CalSTRS's Action Is Entirely Time-Barred

The trial court concluded in its tentative decision that because CalSTRS did not commence an action within three years of its actual knowledge that incorrect payments had been made to Teachers, CalSTRS was "time-barred from taking corrective action regarding the [Teachers'] overpayments."  In the judgment granting Teachers' petition for peremptory writ of mandate, the court determined that CalSTRS was barred from taking action to address the miscalculation of Teachers' respective monthly retirement benefits, including any further withholding or reduction of those benefits, and it ordered CalSTRS to reimburse Teachers any amounts it had previously withheld.

CalSTRS argues that, even if the trial court correctly found that CalSTRS did not commence an action within three years under section 22008, the court erred in concluding that CalSTRS was barred from pursuing any relief as to *any* monthly payments, past or prospective.  CalSTRS contends that under a proper reading of section 22008(c), "each monthly payment triggers a new limitations period."  Therefore,

39

CalSTRS argues, under the continuous accrual theory,[23] the statute of limitations barred its effort to remedy the overpayment problem only as to monthly pension payments made more than three years before it commenced the "action." Teachers disagree, arguing that (1) CalSTRS is barred from asserting the continuous accrual theory under invited error principles; (2) CalSTRS waived the issue by abandoning the continuous accrual theory in proceedings below; and (3) the continuous accrual theory, in any event, is not applicable in this case.

### 1.    Invited Error/Waiver

Teachers claim that counsel for CalSTRS below "unequivocally [declined to assert] the continuous accrual [theory]." Teachers quote a portion of the transcript of the April 2, 2015 hearing in support of their position, contending that CalSTRS is thereby estopped from asserting the continuous accrual theory. They argue, alternatively, that CalSTRS abandoned the argument below and therefore has waived its right to assert it here. Addressing these invited error/waiver contentions requires us to consider the entire context of the briefing and argument below.

In the Committee's decision, it concluded that "under the plain language of section 22008, subdivision (c) each monthly benefit payment triggers a new limitation period. The cases cited by Teachers in support of the proposition that the 'continuing accrual' theory does not apply to section 22008, subdivision (c) are distinguishable . . ." But because the Committee concluded that CalSTRS was timely in commencing an "action" under section 22008, it deemed "the issue of continuing accrual . . . not pertinent to the resolution of the statute of limitations issue."

---

[23] The theory is identified by the parties as "the continuous accrual doctrine" and "continuing accrual doctrine." We adopt the name "continuous accrual theory" used by the Supreme Court. (See *Aryeh*, *supra*, 55 Cal.4th at p. 1192; *Howard Jarvis Taxpayers Ass'n v. City of La Habra* (2001) 25 Cal.4th 809, 822 (*Howard Jarvis Taxpayers*).)

In their trial briefs, the parties—in a somewhat circuitous fashion—raised the theory of continuous accrual. In Teachers' opening brief, they urged—erroneously[24]— that the Committee had "correctly held that the continuing accrual theory does not apply," and they stated that, therefore, they would not address the issue further absent the court's request. (Emphasis and capitalization omitted.) CalSTRS did not directly address the continuous accrual theory in its trial brief. Instead—in what appears to be a shorthand reference to the theory—it observed that "the plain language of [§ 22008(c)] triggers a new cause of action each time a new benefit payment is made based on the 'inaccurate information regarding the eligibility' of the beneficiaries to receive a benefit." Teachers in their reply brief below addressed CalSTRS's point, arguing that the language of section 22008(c) did not support "the proposition that an entire new cause of action is triggered each time a new benefit is paid." They asserted further—relying on *Dillon v. Board of Pension Commrs. of Los Angeles* (1941) 18 Cal.2d 427 (*Dillon*) and *Carrick v. City and County of San Francisco* (1962) 202 Cal.App.2d 402 (*Carrick*)—that the continuous accrual theory "does not apply to matters pertaining to pension benefits." The court heard extensive argument on April 2, 2015. The majority of the hearing was devoted to the issue of whether the statute of limitations under section 22008 barred CalSTRS from taking any action on the overpayment issue. Toward the end of the hearing, the court, after stating it did not believe Teachers' laches defense applied, observed that it was "not at all convinced" that the continuous accrual theory applied. Counsel for CalSTRS responded that *Carrick*, *supra*, 202 Cal.App.2d 402, cited by

---

[24] The Committee found the continuous accrual theory inapplicable based upon its holding that CalSTRS's claim regarding the overpayments in toto was not time-barred. The Committee did not address the issue we face here: whether, under the continuous accrual theory, although CalSTRS may be time-barred as to pension payments made more than three years after it commenced the action, CalSTRS is nonetheless entitled to assert claims as to any monthly periodic pension benefits payable less than three years before it brought the action.

41

Teachers in support of its position that the theory did not apply here, was distinguishable. CalSTRS's counsel then stated—in the passage Teachers urge in support of their invited error/waiver contentions—as follows: "[T]he continuing accrual document [*sic*] appears for the first time in . . . Petitioner's [*sic*] reply brief and inappropriately [*sic*] considered here."

The court in its tentative decision did not specifically address whether the continuous accrual theory applied in connection with Teachers' statute of limitations defense. But in a subsequent (prejudgment) hearing on June 3, 2015, CalSTRS's counsel raised the applicability of the continuous accrual theory in connection with the parties' resolution of the appropriate language for the proposed judgment: The court responded that CalSTRS could not "withhold future payments on the same basis that was litigated in this case." In so concluding, the court specifically held that the continuous accrual theory did not apply.

"Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error. [Citations.]" (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212.) As one court has explained invited error: "[W]here a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error." (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686.)

A party may be deemed "to have *waived* a claim of error either by affirmative conduct or by failure to take proper steps in the trial court to avoid or cure the error. [Citations.]" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:249, p. 8-178, original italics.) As our high court has explained: " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The

42

circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1, original italics (*Doers*); see also *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.)

We disagree with Teachers that CalSTRS is barred from arguing the continuous accrual theory here due to invited error or waiver. The trial court's comments on the record at the two hearings clearly show that it ruled that continuous accrual did not apply because of its own determination of the merits of the doctrine's applicability, not because of the argument of CalSTRS's counsel. (See *Munoz v. City of Union City* (2007) 148 Cal.App.4th 173, 178 [contention not barred by invited error, where error was result of misapplication of law rather than parties' misleading conduct].) And the comment of CalSTRS's counsel that "the continuing accrual [theory is] inappropriately considered here," while ambiguous, appears to have been CalSTRS's assertion that the trial court should not consider Teachers' legal position concerning the theory because they did not timely raise it in their initial trial brief. Moreover, considering the entire context of the proceedings, it is plain that CalSTRS did not waive the argument.

### 2. *Continuous Accrual Theory*

As a general rule, a claim accrues for purposes of the commencement of the statute of limitations, " ' "when it is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citations.]" (*Aryeh*, *supra*, 55 Cal.4th at p. 1191.) One equitable exception to this general "last element accrual rule" of the statute of limitations is the continuous accrual theory. (See *id.* at p. 1192.) Under the continuous accrual theory, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period.

[Citation.]" (*Id.* at p. 1192, fn. omitted.) The kinds of cases in which the continuous accrual theory have been applied—as discussed in *Aryeh*, *supra*, at pages 1198 to 1200—include a variety of instances in which the plaintiff asserted a right to, or challenged the assessment of, periodic payments under contract or under California statutes or regulations. (See, e.g., *Howard Jarvis Taxpayers*, *supra*, 25 Cal.4th at pp. 818-822 [imposition of monthly municipal taxes]; *Green v. Obledo* (1981) 29 Cal.3d 126, 141 [welfare benefits]; *Jones v. Tracy School Dist.* (1980) 27 Cal.3d 99, 103-107 [back wages based upon ongoing discrimination]; *Dryden v. Board of Pension Commrs.* (1936) 6 Cal.2d 575, 580-581 (*Dryden*) [monthly pension benefits].)

CalSTRS contends that the continuous accrual theory applies here. Relying on *Dryden*, *supra*, 6 Cal.2d 575 and the language of section 22008, it argues that even if its action is time-barred in some respect, CalSTRS is only barred from initiating any proceedings relative to pension payments made more than three years prior to the date it commenced an "action." Teachers, relying (as they did below) on *Dillon*, *supra*, 18 Cal.2d 427 and *Carrick*, *supra*, 202 Cal.App.2d 402, assert that the continuous accrual theory is inapplicable.

In *Dryden*, *supra*, 6 Cal.2d at page 577, the petitioner, the surviving spouse of a police officer, presented a claim for a pension 10 months after her husband's death, which was denied by the pension board because the city charter required that such claims be submitted within a six-month period. After the trial court upheld the board's decision (*ibid.*), the appellate court reversed, concluding that petitioner's claim was not entirely barred and that she was entitled to any future pension benefits paid in monthly installments, as well as any that would have accrued within six months prior to her application. (*Id.* at p. 582.) The Supreme Court agreed, reversing the trial court's judgment (*ibid.*) and adopted the opinion of the Court of Appeal, quoting it verbatim (*id.* at p. 576).

The *Dryden* court noted that, under the applicable city charter provision, the pensioner was entitled to monthly payments based upon a calculation of his average monthly salary for three years prior to his death. (*Dryden*, *supra*, 6 Cal.2d at p. 577.) The court described the pension as " 'a periodic[] allowance of money granted by the city in consideration of services rendered or of loss or injury sustained, *and* payments actually made for that purpose.' " (*Id.* at pp. 578-579, original italics.) Another provision of the charter provided that " ' "all . . . claims or demands shall be presented within six (6) months) after the last item or the account or claim accrued." [Citation.]' " (*Id.* at p. 580.) The court rejected the city's contention that under this provision, any claim or application for a pension was required to be filed within six months. Instead, the court observed: " 'The right to pension payments *is a continuing right*. Petitioner by her conduct may have barred herself from collecting payments which have accrued, but this does not mean that she is without means to enforce the right to *present* and *future* pension payments, as distinguished from past and accrued pension payments, provided she proceeds to do so in the manner required by law. The distinction between a single covenant and a continuing covenant is well settled in the law. [Citations.]' " (*Id.* at pp. 580-581, original italics.) The court in *Dryden* thus held that " 'the petitioner is entitled to all those periodic pension payments which fell due within a period of six months prior to her application to the Board . . . and to all those periodic pension payments which have accrued since that date and which will continue to accrue in the future . . .' " (*Id.* at p. 582.) The Supreme Court later reaffirmed that, under *Dryden*, a pensioner's right to receive periodic payments is a continuing one. (See, e.g., *Aryeh*, *supra*, 55 Cal.4th at pp. 1198-1199; *Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462; *Dillon*, *supra*, 18 Cal.2d at p. 430.)

The principle enunciated by our high court in *Dryden* applies to CalSTRS's claim. We are concerned here with periodic payments to retired school teachers under a defined benefit pension system. The right of each of the Teachers to receive monthly payments,

45

and the obligation of CalSTRS to disburse them, are continuing ones that accrue when such payments become due. (*Dryden*, *supra*, 6 Cal.2d at pp. 580-581.) The language of section 22008(c) is consistent with that principle, in that it provides that "[i]f an incorrect *payment* is due to lack of information or inaccurate information . . . , the period of limitations shall commence with the discovery of the incorrect *payment*." (Italics added.) Had the Legislature intended the continuous accrual theory to be inapplicable in these circumstances, it could have expressly so stated; at minimum, it could have employed language suggesting that a failure to timely commence an action to address incorrect pension benefit payments would bar an action concerning any such payments that were incorrect for the same reason. Further, a contrary conclusion would permit a retiree to receive, potentially for years, monthly pension benefits that were not earned; this would be inconsistent with the principle that although pension provisions are to be broadly construed in favor of the person benefited, " ' "they cannot be construed so as to confer benefits on persons not entitled thereto." ' [Citation.]" (*Duarte*, *supra*, 232 Cal.App.4th at p. 385.) Moreover, if the situation were reversed—i.e., if a series of underpayments were made due to a lack of, or inaccurate, information— a contrary holding would permit CalSTRS to escape its obligation to provide full monthly pension benefits to a retired school teacher by holding that the retiree, by failing to bring an action that was timely as to one or more monthly payments, forfeited all rights to complain about any past or future monthly benefits similarly miscalculated.

*Dillon*, *supra*, 18 Cal.2d at p. 427, does not support Teachers' position. There, the surviving spouse of a policeman who had committed suicide made a timely application for a "widow's pension" under the city charter, which was denied. (*Id.* at p. 429.) More than three years later, she filed a mandamus petition that the trial court held was time-barred. (*Ibid.*) The Supreme Court affirmed the principle in *Dryden, supra,* 6 Cal.2d 575 that there is a continuing right to receive periodic pension benefits, and that "any time limitation upon the right to sue for each instalment necessarily commences to run from

46

the time when that instalment actually falls due." (*Dillon*, at p. 430.) The court distinguished the circumstances in *Dillon*, noting that "[b]efore [the] plaintiff can claim these periodic payments, however, she must establish her right to a pension . . . . An action to determine the existence of the right thus necessarily precedes and is distinct from an action to recover instalments which have fallen due after the pension has been granted." (*Ibid.*) The court thus upheld the trial court's conclusion that the plaintiff's cause of action was time-barred under Code of Civil Procedure section 338, requiring that an action upon a liability created by statute be commenced within three years. (*Dillon*, at p. 431.) In so concluding, the Supreme Court held that *Dryden* was factually and procedurally distinguishable, because there, the inquiry concerned the wording of a charter provision establishing the accrual of a six-month period for making an administrative claim, commencing "not [from] the time when the right to the pension first accrues, but [from] the time at which the last item of the claim accrues. In the case of pensions, items accrue indefinitely." (*Dillon*, at p. 432.)

Teachers' reliance on *Carrick*, *supra*, 202 Cal.App.2d 402 is also misplaced. In *Carrick*, the plaintiff, a fire department employee who, upon retirement, began receiving a pension, brought suit 12 years later, contending that he had been misclassified and his pension benefits had thereby been understated. (*Id.* at p. 404.) The appellate court affirmed the trial court's holding that the plaintiff's action was barred by the three-year statute of limitations of Code of Civil Procedure section 338. (*Carrick*, at p. 410.) The court distinguished *Dryden* on the basis that it involved the accrual of a claim for periodic pension benefits to which an entitlement had been established, while the plaintiff in *Carrick* was challenging his classification—akin to asserting a right to a pension—in which case the claim accrued on the date of the plaintiff's retirement. (*Carrick*, at pp. 410-411; cf. *County of San Diego v. Myers* (1983) 147 Cal.App.3d 417, 421, 422 [periodic payment theory did not save plaintiff's claim; dispute concerned statutory

47

entitlement to reimbursement under Medi-Cal program, not for collection of periodic payments].)

Under *Dryden*, *supra*, 6 Cal.2d 575 and based upon the terms of section 22008, we conclude that the continuous accrual theory applies to CalSTRS's action. Accordingly, although it is time-barred as to any claims relating to pension benefit overpayments made more than three years prior to the commencement of the "action" on July 6, 2012, section 22008 does not preclude any such action for past or future monthly payments to Teachers accruing on or after July 6, 2009.

> F.     Conclusion

Teachers argued below that, in addition to CalSTRS's action being time-barred, it was precluded based upon principles of equitable estoppel and laches. In its decision, the court decided "it [was] unnecessary to address [Teachers'] equitable estoppel, and laches defenses" because of its conclusion that CalSTRS's claims were time-barred.

Because we have concluded that the trial court erred in determining that CalSTRS's claims regarding incorrect monthly pension benefits to Teachers were wholly time-barred, the matter must be reversed and remanded. Upon remand, the trial court is directed to consider and decide Teachers' equitable estoppel and laches defenses.

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion. Each party shall bear his/her/its own respective costs on appeal.

_____
WALSH, J. *




WE CONCUR:




_____
Elia, Acting P.J.




_____
Premo, J.




Baxter v. California State Teachers' Retirement System
H042680

---

*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| Trial Court: | Monterey County Superior Court |
| | Superior Court No.: M127193 |

Trial Judge:                      The Honorable
Thomas W. Wills

Attorneys for Appellant          Sheppard, Mullin, Richter & Hampton,
California State Teachers' Retirement    LLP
System:

Robert J. Stumpf, Jr.

Attorneys for Respondents        L+G, LLP
William Baxter et al.:

Sergio H. Parra

Baxter v. California State Teachers' Retirement System
H042680