Filed 11/19/20  Mazgani v. Moda CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| MAHVASH MAZGANI, | B291721 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BC658766 |
| KEVIN MODA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge. Affirmed.

Thomas D. Sands, for Defendant and Appellant.

Glaser, Weil, Fink, Howard, Avchen & Shapiro, Felton T. Newell, for Plaintiff and Respondent.

Respondent Mahvash Mazgani sued her nephew, appellant Kevin Moda,[1] for defamation and false light, claiming Moda caused a banner to be displayed outside her business containing Farsi[2] words meaning "Mazgani is a prostitute." In his defense, Moda claimed the correct translation is "Mazgani is a corrupt woman." The jury found in favor of Mazgani on both causes of action.

On appeal, Moda contends the trial court committed reversible error by ruling Mazgani is not a public figure, improperly instructing the jury on defamation, declining proposed special jury instructions on various affirmative defenses, and excluding the testimony of a proposed witness. He further contends Mazgani is not entitled, as a matter of law, to the jury's $20,000 economic damages award. We reject Moda's contentions and affirm the judgment.[3]

---

[1] Moda is named in the lawsuit as "Houman Moghadda, aka Kevin Moda," but he is referred to as "Kevin Moda" throughout the proceedings.

[2] The language is sometimes referred to as Persian. Because the parties use the term Farsi, so do we.

[3] The notice of appeal is from the judgment and the orders denying Moda's motion for new trial and partially denying his motion for judgment notwithstanding the verdict (JNOV). We affirm those orders but do not separately address them because they raise no additional issues.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Pleadings

In August 2017, Mazgani filed a first amended complaint against Moda and Marcos Alonzo alleging causes of action for defamation and false light. She sought compensatory and punitive damages. Representing himself, Moda filed an answer denying the allegations and asserting affirmative defenses.[4]

### B.     The Trial

At trial, the following facts were undisputed. Mazgani was born in Iran and immigrated to the United States. She is fluent in Farsi, Iran's predominant spoken language. Also, Mazgani owns a successful business called Mazgani Social Services, Inc., located in an area of Los Angeles inhabited by many Farsi speakers. Mazgani's clients are primarily individuals who speak only Farsi and need help obtaining Social Security benefits and other government assistance. Mazgani has operated her business for 26 years. Both Mazgani and her business are well-known and well-respected in the local Iranian/Iranian-American community.[5]

On or about April 2, 2017, Moda established a website in response to a third party's unrelated class action filed against Mazgani and her business. Moda also circulated flyers among

---

4     We do not address various cross-complaints filed in the action below because they are not pertinent to this appeal.

5     Members of these groups sometimes refer to themselves as Persians or Persian Americans. We adopt the nomenclature used by the parties.

attendees at an Iranian community festival. The website and the flyers criticized Mazgani and her business and solicited people to join the class action. Later, Moda created similarly worded banners and paid Alonzo and others to distribute the flyers and carry the banners near and around Mazgani's business to "protest" her business practices. The protests lasted for weeks and took place in locations where they would be seen by Iranian Americans and other Iranian immigrants.

Mazgani responded at some point by hiring two people to carry a sign and distribute flyers for several days in Hollywood and downtown Los Angeles. The targeted areas were frequented by Moda and were chosen to ensure he saw these counter protests. The sign and flyers stated Moda was "a fraudster" and "litigious."

On April 21, 2017, Alonzo appeared outside Mazgani's business, carrying a new banner created by Moda. The same banner was also displayed near Mazgani's home. On the banner was a statement written in Farsi.[6] The primary issue at trial, as relevant to this appeal, was the correct translation of that statement, specifically the words "zan" and "kharab."

Mazgani and her secretary, Shohreh Sharifzadeh, who is also a native Farsi speaker, testified the statement translates as "Mahvash Mazgani is a prostitute." Mazgani denied she is or ever was a prostitute.

Mazgani's expert witness, Amir Faress, is a translator/interpreter for the Los Angeles Superior Court. He testified when "zan" (woman) and "kharab" (broken) are used

_____

6    Although there is some ambiguity in the record, it appears this was the only statement written in Farsi on any of Moda's flyers or banners.

together in a statement, they are most commonly understood by Farsi speakers to mean "prostitute." Faress translated the statement on the banner as "Mahvash Mazgani is a prostitute," or possibly "Mahvash Mazgani is a promiscuous woman."

Moda testified in his defense and denied calling his aunt a prostitute, or that the statement on the banner said Mazghani is a prostitute. On cross-examination, Moda acknowledged having no evidence that Mazgani is a prostitute or "someone who sells [her] body for sex[.]"

Aslan Aslanian, an interpreter/translator, testified as Modi's expert. He translated the statement on the banner as, "Mahvash Mazgani is a corrupt woman." On cross-examination, however, Aslanian agreed "zan kharab" could mean "a woman is a prostitute" and the statement on the banner could be translated as "Mahvash Mazgani is a prostitute."

Ali Hashemi-Alaei, another witness called by Moda and also a court interpreter, testified on direct examination that the word "kharab" is not generally used to describe someone as being corrupt. On cross-examination, Alaei translated the disputed statement as "Mahvash Mazgani is a prostitute."

## C.    The Verdict and Damages

The jury returned special verdicts on both causes of action in favor of Mazgani and against Moda and Alonzo. It awarded her $30,000 in general damages for pain and suffering, $20,000 in special damages for economic loss, and $50,000 in punitive damages. The trial court entered judgment in favor of Mazgani on the special verdicts.

Moda and Alonzo jointly filed motions for judgment notwithstanding the verdict and for a new trial. The court

5

granted the motion for judgment notwithstanding the verdict in part, nullifying the punitive damages award against Moda, but denied the new trial motion in its entirety. Moda timely appealed.

## DISCUSSION

### A. The Trial Court Did Not Err by Concluding Mazgani Is Not a Public Figure

Following the presentation of evidence, Alonzo's counsel made an oral motion for directed verdict, arguing Mazgani is a public figure. The trial court found Mazgani is a private figure and denied the motion. Moda later asked the court to declare Mazgani a limited purpose public figure, because she inserted herself into the controversy by protesting an issue that was a matter of public concern. But the court confirmed its earlier ruling that Mazgani is a private figure.

Moda contends these rulings constituted error. He argues the trial court's finding that Mazgani is a private figure caused the jury to be given an erroneous instruction on defamation, which omitted the element of malice, and therefore lowered Mazgani's burden of proof.[7] We find no error.

#### 1. Defamation

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong v.*

---

[7] The jury was instructed with CACI No. 1704 Defamation per se—Essential Factual Elements (Private Figure—Matter of Private Concern).

6

*Jing* (2010) 189 Cal.App.4th 1354, 1369.) "When a defamation action is brought by a public figure, the plaintiff, in order to recover damages, must show that the defendant acted with actual malice in publishing the defamatory communication. [Citation.] Because of this increased burden, defendants in defamation actions . . . obviously attempt to establish that the plaintiff was such a public figure." (*Denney v. Lawrence* (1994) 22 Cal.App.4th 927, 933.)

"There are two types of public figures: 'The first is the "all purpose" public figure who has "achieve[ed] such pervasive fame or notoriety that he [or she] becomes a public figure for all purposes and in all contexts." The second category is that of the "limited purpose" or "vortex" public figure, an individual who "voluntarily injects himself [or herself] or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."' [Citation.]' . . . ." (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 247.)

### 2. Standard of Review

"At trial, whether a plaintiff in a defamation action is a public figure is a question of law for the trial court. [Citations.] On appeal, the trial court's resolution of disputed factual questions bearing on the public figure determination is reviewed for substantial evidence, while the trial court's resolution of the ultimate question of public figure status is subject to independent review for legal error. [Citations.]" (*Khawar v. Globe Internat.* (1998) 19 Cal.4th 254, 264.)

7

### 3. Mazgani is a Private Figure in the Context of this Case

Moda does not contend Mazgani should be considered as the first type of public figure. Being well-known and well-respected in the local Iranian community does not mean she has achieved sufficiently pervasive fame or notoriety to be considered a public figure for all purposes and in all contexts. (See *Gertz v. Robert Welch* (1974) 418 U.S. 323, 351 [94 S.Ct. 2977, 41 L.Ed.2d 789].)

Moda's primary argument is that Mazgani is a limited purpose public figure. "Unlike the 'all purpose' public figure, the 'limited purpose' public figure loses certain protection for his [or her] reputation only to the extent that the allegedly defamatory communication relates to his [or her] role in a public controversy." (*Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 253-254; *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 ["there should be some degree of closeness between the challenged statements and the asserted public interest. [Citation.]"].) Moda reasons Mazgani is a limited purpose public figure because she thrust herself into the public eye by engaging in counter protests.

One flaw in Moda's argument is the alleged defamatory statement, "Mazgani is a prostitute," has no relationship to the controversy over Mazgani's business practices or her public efforts to defend them. Thus, rather than being focused on issues related to the "protests," Moda's statement was an effort "to gather ammunition for another round of [private] controversy." (*Connick v. Myers*(1983) 461 U.S.138, 148 [103 S.Ct. 1684, 75 L.Ed.2d 708]; see *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 476, 485 [a pastor who published a book, ran a website, hosted a

8

widely broadcast radio show, and made sermons available on YouTube, iTunes, and Twitter, was not a limited purpose figure in the context of the lawsuit, where defendants accused him of committing child abuse, child molestation, tax evasion, and theft].) Mazgani is not a limited purpose public figure in the context of this lawsuit.

In any event, it is unclear why Moda is pursuing this argument. "A public figure suing for defamation 'must demonstrate "actual malice" by clear and convincing evidence.' [Citation.] Actual malice 'requires a showing that the allegedly false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." [Citation.]" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 389, overruled on other grounds by *Baral v. Schnitt* (2016) 1 Cal.5th 376, 391.). As noted above, on cross-examination, Moda was asked whether he had any evidence to present at trial to establish Mazgani had ever been a prostitute. Moda answered, "If you mean by prostitute someone who sells their body for sex, I do not." Moda essentially conceded the suit was brought with knowledge that the statement was made with malice in its constitutional sense. Thus, even if the trial court erred by finding Mazgani is not a public figure, any error was harmless.

## B.     The Trial Court Properly Instructed the Jury on Defamation

Moda's opening brief is often unclear and difficult to follow.[8] We understand him to argue: (1) The jury should have been instructed to determine which of the experts' translations of the alleged defamatory statement is correct: "Mahvash is a

---

8     Moda did not file a reply brief.

9

prostitute" or "Mahvash Mazgani is a corrupt woman"; and (2) Mazgani should have had the burden to prove whether the statement was defamatory. While we agree, these are non-issues. The trial court's instruction required the jury to choose between the competing translations and placed the burden on Mazgani to prove the statement was defamatory. Over Moda's objection, the trial court instructed the jury with CACI No. 1704, which (as given) provided in relevant part: "Mahvash Mazgani claims that Kevin Moda and Marcos Alonzo harmed her by making the following statement: 'Mahvash Mazgani is a prostitute.'  To establish this claim, Mahvash Mazgani must prove all of the following: [¶] *Liability*  [¶] 1. That Kevin Moda and/or Marcos Alonzo made the statement to persons other than Mahvash Mazgani. [¶] 2. That these people reasonably understood that the statements were about Mahvash Mazgani. [¶] 3. That these people reasonably understood the statement to mean Mahvash Mazgani engages in serious sexual misconduct that is incompatible with her business. [¶] 4. That Kevin Moda and/or Marcos Alonzo failed to use reasonable care to determine the truth or falsity of the statement."

Furthermore, the special verdict form directed the jury to answer the question, "Did Kevin Moda or one of his agents intentionally hold a banner stating, as a statement of fact, that 'Mahvash Margani is a prostitute?'" The jury answered in the affirmative.

Together CACI No. 1704 and the special verdict form establish the jury had to find which of the experts' translations of the alleged defamatory statement on the banner was accurate,

10

and Mazgani had the burden to prove the statement was defamatory.[9]

## C. The Trial Court Did Not Err by Declining To Instruct on the Affirmative Defenses of Estoppel, Waiver, Unclean Hands, and Litigation Privilege.

At the jury instruction conference, the trial court denied Moda's request to give his proposed special jury instructions on various affirmative defenses. Moda contends the trial court prejudicially erred by refusing to instruct on his affirmative defenses of estoppel, waiver, unclean hands and litigation privilege. We disagree.

---

[9]     Moda offered his own instruction, which was rejected by the trial court. It read in pertinent part: "Mahvash Mazgani alleges that a 'Banner' was displayed by the Defendant that stated in Farsi, 'Mahvash Mazgani is a prostitute.' The Defendants dispute this translation. In order to prove that the 'Banner' is defamatory towards, and/or casts false light on, Mahvash Mazgani, Mahvash Mazgani must prove that the proper English translation of the banner is 'Mahvash Mazgani is a prostitute.' [¶] For the purposes of this Action, the term 'Prostitute' shall be defined exclusively as 'a person who engages in sexual activity for payment.' For the purposes of this instruction, a 'corrupt woman' is NOT a prostitute." The instruction then asks the jury to determine whether the "proper English translation of the Banner" is 'Mahvash Mazgani is a prostitute?'" This proposed instruction was incomplete in some respects, duplicative of CACI No. 1704 in some respects, and argumentative with respect to the meaning of "corrupt woman." The trial court, therefore, properly rejected it in favor of CACI No. 1704. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1673 [trial court may refuse to give an incomplete or erroneous instruction].)

11

### 1. Estoppel, Waiver, and Unclean Hands

During the conference, Moda told the trial court that he ""cited authority for, the Hill versus National Collegiate Athletic Association [*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 (*Hill*)[10]], in respect to estoppel and waiver o[r] unclean hands, [and] that instruction should be given as well." The trial court stated it had not received any proposed special instructions on those three affirmative defenses. The trial court acknowledged it had received a special verdict form concerning estoppel, which it was not going to provide to the jury. The trial court told Moda that if he had proposed instructions on the affirmative defenses, it would consider them. Moda then insisted he had provided the court with a special instruction on estoppel and read from the

---

10    In *Hill*, the Supreme Court encapsulated a framework for evaluating a constitutional privacy claim. "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. [¶] . . . [¶] A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests. Plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests." (*Hill, supra,* 7 Cal.4th at pp. 39-40) "Of course, a defendant may also plead and prove other available defenses, e.g., consent, unclean hands, etc., that may be appropriate in view of the nature of the claim and the relief requested." (*Id.* at p. 40.)

special verdict form. The trial court again declined to give the form to the jury.

We have examined Moda's packet of proposed special jury instructions and find none on estoppel, waiver, or unclean hands. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.) A party is not entitled to special jury instructions it never proposed to or requested from the court.

### 2. Litigation Privilege

Moda also contends the trial court erred by failing to charge the jury with his proposed special instruction on litigation privilege. He did provide this instruction to the court.[11] The trial

---

11    Moda's proposed instruction reads: Moda and Alonzo "allege that the communications they made about the Plaintiff (Mahvash Mazgani) is [sic] in their public protests [and] are absolutely protected from prosecution for False Light and Defamation because those communications were already published in a judicial proceeding. To establish this defense, [Moda and Alonzo] must prove the following: [¶]1. A judicial proceeding or any other official proceeding authorized by law was initiated at some time before April 2, 2017 [the date on or about Moda posted his website] (aka "the OTHER LAWSUIT"); [¶] 2. This OTHER LAWSUIT involved Mahvash Mazgani, [daughter] Neyaz Mazgani, [daughter] Nazanin Mazgani, [employee] Shohreh Sharifzadeh, and/or Mazgani Social Services INC. (aka "the PLAINTIFFS); [¶] 3. The communications made by [Moda and Alonzo] about the PLAINTIFFS in this action were/are related to, or based on, the allegations made against the PLAINTIFFS in this OTHER LAWSUIT."

court properly rejected it, however, because the litigation privilege does not apply in this case.

"The litigation privilege applies 'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' [Citation.] "'The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.]" [Citation.] The litigation privilege is interpreted broadly in order to further its principal purpose of affording litigants and witnesses the utmost freedom of access to the courts without fear of harassment in derivative tort actions. . . . The privilege is absolute and applies regardless of malice. [Citation.]' [Citation.]" (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1300.) As long as a communication has some reasonable relation to a judicial proceeding, the person responsible for it is immune from all civil liability other than malicious prosecution. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)

Moda's proposed jury instruction, JNOV motion, and argument on appeal all suggest his intent to invoke the litigation privilege to protect what he maintains is the accurate translation of the alleged defamatory statement —"Mahvash Mazgani is a corrupt woman." According to Moda, the translation is a privileged communication because it relates to similar allegations he made in one or more prior lawsuits filed against Mazgani and/or her business. In other words, Moda was merely persisting in his efforts to expose her allegedly fraudulent business practices.

14

Moda's position completely misses the mark. If the jury agreed with his translation of the statement on the banner, he would not need the litigation privilege because he would not be found to have defamed Mazgani. As the trial court pointed out in denying Moda's JNOV motion, the actionable translation of the statement is "Mahvash Mazgani is a prostitute." And, Moda made no showing *that* statement directly or logically related to any litigation apart from the current lawsuit. To be sure, "'communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' *assuming they are logically related to litigation.* [Citation.]" (*Blanchard v. DIRECTTV, Inc.* (2004) 123 Cal.App.4th 903, 921, italics added.) The litigation privilege does not protect Moda from civil liability in this case.

### D. The Trial Court Did Not Abuse Its Discretion by Excluding a Proposed Witness

At a pretrial hearing, Mazgani moved in limine to exclude several proposed defense witnesses, including Sherry Jalilvand and Magi Moghanaki. In her written motion, Mazgani's counsel argued the two witnesses were family members who had no personal knowledge of the "protests" during which the alleged defamatory banner was displayed. Counsel also argued Jalilvand was elderly and "not competent to testify at trial as she is not of sound mind."

In his written opposition, Moda stated Jalilvand would testify to Mazgani's reputation of "exchanging herself for small goods, (dinner, panty hose, other little luxuries)." He claimed such conduct "qualifies Mazgani as a prostitute." Moda argued

15

Moghanaki, Jalilvand's daughter, who is in the same line of business as Mazgani, would testify about Mazgani's unlawful business activities. At the conclusion of the hearing, the court agreed to exclude the testimony of Sherry Jalilvand, but to admit the testimony of Magi Moghanaki.

At Moda's request, a settled statement of the hearing was prepared for his new trial motion. According to the settled statement, Mazgani's counsel presented the same arguments she made in her written motion. Moda, however, argued *both* witnesses would testify about Mazgani's corrupt business practices.

In excluding the proposed testimony, the trial court found Jalilvand is elderly, not of sound mind, and that her testimony would be duplicative of Moghanaki's testimony, who would be permitted to testify. Moda ultimately did not call Moghanaki to testify at trial.

The trial court did not abuse its discretion under Evidence Code section 352 to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The trial court's decision not to admit Jalilvand's testimony, which would have been cumulative of Moghanaki's testimony, was not an abuse of discretion.

Moda claims the trial court's ruling deprived him of his right to present truth as an affirmative defense. (See *Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180 [truth of a statement is an absolute defense against defamation.].) In general, "the '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's

right to present a defense.' [Citations.]" (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) However, "Evidence Code section 352 must yield to a defendant's due process right to a fair trial and to the right to present all relevant evidence of *significant* probative value to his or her defense. [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 998-999, original emphasis.) Moda argues having previously informed the trial court in his written opposition that Jalilvand's knowledge of Mazgani's reputation was critical to his defense, the court prejudicially erred by excluding her testimony. Moda urges in his opening brief that Jalilvand is "the only living soul who could testify with personal knowledge regarding [Mazgani's] younger years."

Moda made a similar argument during the hearing on his new trial motion. The court reminded Moda that (1) when asked for an oral offer of proof at the earlier hearing on the motion in limine, Moda stated only that Jalilvand would testify concerning Mazgani's business dealings; and (2) Moda conceded Jalilvand's testimony would be duplicative of Moghanaki's testimony, and there was no need to inconvenience Jalilvand, an elderly woman with possible mental health issues. Moda did not disagree with the court's recollection, but attempted to justify having failed to make an offer of proof at the motion in limine hearing. Moda explained, "Your Honor, when someone files something, I just don't think it's appropriate to regurgitate the same thing that is in writing."

We conclude Moda has waived his claim of error by not making an offer of proof at the hearing. "A party may be deemed 'to have *waived* a claim of error either by affirmative conduct or by failure to take proper steps in the trial court to avoid or cure the error. [Citations.]' [Citations.]" (*Baxter v. State Teachers'*

17

*Retirement System* (2017) 18 Cal.App.5th 340, 378.) As our high court has explained: "'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method. The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial." [Citation.]' [Citations.]" (*Ibid.* ; see also *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.)

## E.     The Award of Special Damages for Economic Loss Is Consistent with Applicable Law

Mazgani filed the lawsuit against Moda and Alonzo in her individual capacity and was awarded $20,000 in special damages for economic loss. Moda contends the award was improperly based on evidence of the business's lost profits to which she was not entitled. Not so.

Mazgani's special damages award was for loss of earnings resulting from the defamatory statement. Both Mazgani and her secretary testified to the steep decline of business activity, and serious loss of existing and potential clients after the offending banner was displayed. "It is clear that under California law, a loss of clients following [ ] defamation is evidence of recoverable special damages. [Citation.]" (*O'Hara v. Storer Communications* (1991) 231 Cal.App.3d 1101, 1112 (*O'Hara*).) In *O'Hara*, the plaintiff filed suit for slander and recovered $300,000 in lost

18

earnings after a television station mistakenly labeled her a prostitute in a news story. (*Id.* at pp. 1105, 1116.) She introduced, as evidence of her special damages, business calendars for two years, "which chronicled substantial business activity before the slanderous broadcast" and no activity following the broadcast. (*Id.* at p. 1112.) The plaintiff also testified that after the "broadcast she no longer received phone calls about work." (*Ibid.*; see also *MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 548 [dentist alleging as a result of libel he suffered pecuniary loss of existing patients and a sharp decline in new patients sufficiently pleaded special damages under Civil Code section 48a].)

Moda correctly notes the general rule is owners of incorporated businesses may not recover lost profits per se if they bring suit in their individual capacity only, but they may produce evidence of their business's lost profits as evidence of their own lost earnings or impaired capacity to earn.

For example, in *Osterode v. Almquist* (1948) 89 Cal.App.2d 15, the plaintiff, a commercial fisherman, skipper and part owner of a fishing boat, presented evidence showing he was preparing to take a fishing trip just prior to being injured by the defendant. The plaintiff and his witnesses testified regarding his expected catch, the value of the fish, and his expenses. The evidence was properly admitted: "While a plaintiff in an action for personal injuries cannot ordinarily recover for loss of profits derived from a business, [citations] however, under a plea of general damages and to prove loss of earning capacity, it is permissible to show what wages, salary, or emoluments would be open to the plaintiff in a business, vocation, trade, or profession which he understands and in which he would have the right and ability to engage except

for the injuries sustained, [citation] and the earning capacity of [the plaintiff] prior to the accident was a proper subject of inquiry. [Citations.]" (*Id.* at pp. 19-20; see also *Sharfman v. State* (1967) 253 Cal.App.2d 333, 337 [plaintiff landscape architect may establish his lost income by showing what his "share of partnership income had been in the past"].)

Moda points to no evidence that Mazgani was attempting to recover the business's lost profits, rather than her own lost income, or even that those two figures differed.

## DISPOSITION

The judgment is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.